Corey A. SIMMS, Appellant,

v.

UNITED STATES, Appellee.

No. 92–CF–1234.

District of Columbia Court of Appeals.

Argued Oct. 13, 1993.
Decided Dec. 6, 1993.

---

William G. Dansie, appointed by this court for appellant.

Douglas F. Gansler, Asst. U.S. Atty., with whom J. Ramsey Johnson, U.S. Atty. at the time the brief was filed, and John R. Fisher, Elizabeth Trosman, and Barbara A. Grewe, Asst. U.S. Attys. were on the brief, for appellee.

Before ROGERS, Chief Judge, TERRY and SULLIVAN, Associate Judges.

ROGERS, Chief Judge:

Appellant, Corey A. Simms, appeals his conviction by a jury of kidnapping while armed, unauthorized use of a vehicle, destruction of property, armed robbery and assault with a deadly weapon, D.C.Code §§ 22–2101, –3202; § 22–3815; § 22–403; §§ 22–2901, –3202; § 22–502. Because we conclude that appellant's conviction of assault with a dangerous weapon merges with his conviction of armed robbery, we reverse so much of the judgment as pertains to the assault with a dangerous weapon conviction; otherwise we affirm.

### I.

The evidence at trial showed that while visiting a customer in Silver Spring, Maryland as a salesperson for Snap-on Tools, Robert Lee parked his tool van near a Merchant's Tire store and went into the store to meet with his customers. When he returned to the van to retrieve some tools, he observed two males standing at the rear of the van. One of the men looked straight at Lee; the other man kept his head to the side. Mr. Lee unlocked the van, entered, and was beginning to close the door when the two men attempted to gain entry into the van. One man pointed a handgun at Lee while trying to force the van door open, and eventually held the gun to Mr. Lee's head and told him to get on his knees and give them the money. Mr. Lee gave the men $300, after which they handcuffed him, pushed him onto the floor, handcuffed his ankles, and put a jacket over his head. The men asked Mr. Lee how to turn off the flashers and start the van and told Mr. Lee that they would "do [him]" if he didn't tell them.

One man drove the van toward the District of Columbia while the other knelt on Mr. Lee's back, holding a gun to his head. Within the first hour of the ride, Mr. Lee felt the van hit something, but the van did not stop. It was subsequently determined that the van had hit a Murray's Steak truck in the 5200 block of Georgia Avenue in the District of Columbia. Later, the men parked the van and searched the toolbox drawers at the front of the van, and upon finding $1,000 cash they told Mr. Lee to tell them where more money was or they would "do [his] ass." Mr. Lee then told them that there was $20,000 hidden in the toolbox in the back compartment of the van, and the men took that cash as well. The men also discovered Mr. Lee's pistol and "came back, real angry with [Mr. Lee], and said they were going to do [him] with [his] own gun."

The men stopped the van again for ten to twenty minutes, at which time at least one of them left and re-entered the van. Mr. Lee heard the men discuss their plans for him, and Mr. Lee thought that one of them wanted to kill him while the other man was more hesitant about it. Mr. Lee heard some talk about a dumpster and a river, and he believed the men were going to dispose of his body in one of those two places. When Mr. Lee repeatedly pleaded with the men to spare him, one of the men hit Mr. Lee on the face with something hard.

Upon their final stop, the two men removed tools from the van for a fifteen to twenty minute period. Thereafter, because the engine was still running and the handbrake was not set, the van rolled backwards

and crashed into a building. A Metropolitan Police Department officer entered the van and released Mr. Lee from the handcuffs.

As a result of an ensuing investigation, appellant was arrested. At two lineups nearly two months after his abduction, Mr. Lee identified someone other than appellant as his assailant. However, Detective Patrick McNerney of the Montgomery County (Md.) Police interviewed Lawrence Krupnak,[1] a Silver Spring, Maryland resident who had seen two men park a red sports car near his house and walk towards the Merchant's Tire store on the day of the crime. At a lineup, Mr. Krupnak identified appellant as one of the two men he had seen that day in Silver Spring. Appellant's fingerprints were found inside the red sports car and Mr. Lee's van.

Upon his arrest, appellant confessed, giving a detailed account of the events and signing a typed statement. At trial, appellant denied involvement in the armed robbery and kidnapping of Mr. Lee, and implicated Stephen Wilson as the sole perpetrator of the crimes. Appellant explained that his familiarity with the details of the crimes was due to the fact that Wilson had told him and several others about the crimes that Wilson had committed. Appellant admitted, however, that he had assisted Wilson in removing items from the van and had seen Mr. Lee handcuffed on the van floor. The jury found appellant guilty on all charges except two firearm charges under D.C.Code § 22-3204(a) and (b).

## II.

Appellant contends that the trial judge erred in failing, *sua sponte*, to give special instructions to the jury that it was required to agree unanimously whether (1) appellant's conviction of armed robbery was based on the robbery of the van or the money and tools contained therein; (2) appellant's conviction for assault with a dangerous weapon was predicated on appellant's holding a gun to Mr. Lee's head or striking Lee in the face with something hard; and (3) appellant was

guilty as an aider and abettor (based on appellant's testimony) or as a principal. We find no error, much less plain error. *See Green v. United States*, 544 A.2d 714, 715 (D.C.1988); *see also Shivers v. United States*, 533 A.2d 258, 263 (D.C.1987) (no "miscarriage of justice" occurred below due to lack of *sua sponte* instruction).

 The requirement for a special unanimity instruction arises when the court cannot deduce from the record whether the jury must have agreed upon one particular set of facts. *See Horton v. United States*, 541 A.2d 604, 611 (D.C.1988). Generally, for the unanimity requirement to apply, there must be evidence tending to show either legally or factually separate incidents. *Scarborough v. United States*, 522 A.2d 869, 873 (D.C.1987) (en banc); *see also Schad v. Arizona*, ── U.S. ──, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (plurality opinion). Incidents have been held to be legally separate when "the appellant presents different defenses to separate sets of facts, or when the court's instructions are ambiguous, but tend to shift the legal theory from a single incident to two separate incidents." *Gray v. United States*, 544 A.2d 1255, 1257 (D.C.1988) (citations omitted). Incidents have been held to be factually separate when independent criminal acts have occurred at different times, or when a subsequent criminal act is motivated by "a fresh impulse." *Id.*

 There is no merit to appellant's contention that a special unanimity instruction was necessary to ensure unanimity by the jury on whether appellant was guilty of armed robbery of the van or of the tools and money inside the van. These are not legally or factually separate incidents. *See id.* at 1258 (single unbroken chain of events). Appellant was charged with one count of armed robbery for robbing Mr. Lee of his property, which included both the van and its contents. The robbery of the van and the goods therein were not "detached incidents but a continuing course of . . . conduct." *Shivers v. Unit-*

---

1. The interview lasted fifteen minutes and, according to Mr. Krupnak, the detective took notes during the interview. At trial the detective denied taking notes, and the government stated the

detective memorialized the interview in a typewritten report of his investigation, which the defense received.

ed States, supra, 533 A.2d at 262 (quoting *Glymph v. United States,* 490 A.2d 1157, 1160 (D.C.1985)). Nor did appellant raise separate defenses for the van and for the personal property taken from the van. There was no reason for, nor indication of, any jury confusion on this issue. Therefore, no unanimity instruction was required for the armed robbery count.

As to the need for a special unanimity instruction in order to clarify on what basis the jury found appellant guilty of assault with a dangerous weapon—holding a gun to Mr. Lee's head or striking Lee in the face with something hard—there is no indication of juror confusion. There may have been room for some confusion, since the phrase "hard object," which appeared in the jury verdict form, was used by the victim during his testimony to describe both the gun held to his head as well as what was used to strike his face. Nonetheless, appellant has failed to show error so prejudicial as to jeopardize the very integrity of the trial. *Green v. United States, supra,* 544 A.2d at 715. There was only one incident encompassed within appellant's indictment for assault with a dangerous weapon—the striking of Mr. Lee's face. *See Tyler v. United States,* 495 A.2d 1180, 1182 (D.C.1985) (danger of non-unanimous verdict in criminal prosecution arises where one charge encompasses two separate incidents). Further, the prosecutor never argued to the jury during closing arguments that the gun to the head was, or could be, the basis for the assault charge. Indeed, it appears that throughout the trial there was never any direct suggestion that the holding of a gun to the victim's head could be the basis for the assault charge. Nor was there any indication of jury confusion, such as a note from the jury during deliberations. Thus, appellant's argument that the jury may have been confused about the basis of the assault charge is mere speculation. *See Owens v. United States,* 497 A.2d 1086, 1093 (D.C. 1985) (court cannot speculate about jury's thought processes), *cert. denied,* 474 U.S. 1085, 106 S.Ct. 861, 88 L.Ed.2d 900 (1986).

Finally, appellant's contention that a special unanimity instruction was required because some jurors may have found him guilty only of aiding and abetting rather than as a principal is frivolous. Appellant argues that some of the jurors may have believed appellant's testimony at trial—that he did not participate in the initial seizure of the van or kidnapping of Mr. Lee, but was involved only in removing tools from the van, at which time he saw Mr. Lee handcuffed in the van. Thus, he maintains, some jurors may have concluded that he was only an aider and abettor while others concluded he was a principal. This argument fails for several reasons. First, there was only one course of conduct. Second, it was sufficient that the jury agreed unanimously that appellant participated in the offense, whether as an aider or principal. *Tyler v. United States, supra,* 495 A.2d at 1182 (when there is only one event at issue, a special unanimity instruction is not required to determine whether the defendant was a principal or an aider or abettor); D.C.Code § 22–105 (1989).

### III.

Appellant's merger arguments stem from his contentions that (1) the kidnapping was coextensive in time and place with the robbery charge, and, therefore, the kidnapping charge merges with his conviction of armed robbery; (2) the unauthorized use of a motor vehicle conviction merges with the armed robbery conviction if the armed robbery conviction was based solely on the robbery of the van and not on the robbery of the money and tools; and (3) his conviction for assault with a dangerous weapon merges with the armed robbery conviction if the jury's verdict on the assault was predicated on appellant's holding a gun to Mr. Lee's head. We find merit only in the argument that the assault conviction merges with the armed robbery conviction.

In *Byrd v. United States,* 598 A.2d 386, 389 (D.C.1991) (en banc), the court rejected an evidentiary test for merger analysis, holding, consistent with Supreme Court authority and the District of Columbia statute, that the test to be applied in assessing whether convictions merge for double jeopardy purposes turns on the statutory elements of a particular violation rather than the evi-

dence adduced at trial. Absent clear legislative intent to allow multiple punishments for the same act, courts must apply the *Blockburger* test to determine whether the two offenses merge. *Ray v. United States,* 620 A.2d 860, 864 (D.C.1993). The Supreme Court held in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), that "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each requires proof of a fact which the other does not." *See* D.C.Code § 23–112 (1989). In applying the test, we compare the statutorily-specified elements of the offenses involved, and not the facts of the case at hand. *Byrd, supra,* 598 A.2d at 389.

Our decision in *Monroe v. United States,* 600 A.2d 98, 99–100 (D.C.1991), disposes of appellant's contentions that his convictions of kidnapping and armed robbery merge, and that his convictions for unauthorized use of a vehicle and armed robbery merge. Hence, the only question is whether his convictions for assault with dangerous weapon and armed robbery merge.

 Assault is sometimes a lesser-included offense of armed robbery.[2] *See Owens, supra,* 497 A.2d at 1096 (when the assault is done in order to effectuate the robbery, it is not a separate offense). However, where two offenses are triggered by separate acts, merger is precluded. The principle is illustrated in *Norris v. United States,* 585 A.2d 1372, 1375 (D.C.1991), where the court held that the assault with a dangerous weapon charge was a lesser-included offense of the

armed robbery charge, finding no evidence that the defendant had reached a "fork in the road" or that there was a "new impulse." In *Norris,* the victim was hit with a pipe to keep him quiet during an in-progress robbery; hence, the assault was a part of the robbery. *Id.*

 Similarly, in the instant case, we find unpersuasive the government's position that the blow to the victim's head was not done to effectuate the in-progress armed robbery, but was done under a "fresh impulse", thereby precluding merger. The evidence before the jury indicated that the striking of the victim's face with the hard object was done to quiet him so that the robbery effort would not be frustrated. The two men were still in the process of transporting the proceeds of the robbery, and they had previously subdued the victim and threatened him with bodily harm (threatening to "do [him]") on at least two occasions. There is nothing to suggest that the robbery in progress had ended and that appellant was embarking on a new endeavor when Mr. Lee was struck, since at the time the asportation of the stolen goods was on-going. The government's reliance on *Gray, supra,* 544 A.2d at 1258, is misplaced; the court there noted the distinction between a course of conduct even where "there has been some spatial or temporal separation between assaultive acts" and a "succession of clearly detached incidents" in concluding that a special unanimity instruction was unnecessary. *See also Shivers, supra,* 533 A.2d at 259 (acts "fueled by the same original impulse"). The evidence here did not show "clearly detached incidents," and hence the two convictions merge.[3]

2. The charge of assault with a dangerous weapon required proof that the defendant (1) committed a threatening act, (2) with the apparent present ability to injure the victim, (3) voluntarily, on purpose, and not by mistake, (4) with a dangerous weapon. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, No. 4.07, (4th ed. 1993); D.C.Code § 22–502 (1989). The armed robbery charge required proof that the defendant (1) took property of some value, (2) from the immediate possession of the complainant, (3) using force or violence, (4) and carried the property away, (5) with the specific intent to steal it, (6) while armed with a firearm. CRIMINAL JURY INSTRUCTIONS FOR THE DISTRICT OF COLUMBIA, Nos. 4.46,

4.03; D.C.Code §§ 22–2901, –3202 (1989). The armed robbery charge requires proof of the taking of something of value, but the assault charge does not require proof of any element not required in the armed robbery charge.

3. Appellant's contention that the prosecutor failed in his obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to disclose to defense counsel prior to trial that the complainant had misidentified his assailant at a lineup, is meritless. Not only was appellant's counsel present at that lineup, and thus knew of the misidentification prior to trial, *see Gates v. United States,* 481 A.2d 120, 127 (D.C.1984), *cert. denied,* 470 U.S. 1058, 105 S.Ct.

Accordingly, we reverse the judgment of conviction insofar as it pertains to a conviction for assault with a dangerous weapon; otherwise we affirm the judgment.

1772, 84 L.Ed.2d 832 (1985); *Henson v. United States*, 399 A.2d 16, 18 (D.C.), *cert. denied*, 444 U.S. 848, 100 S.Ct. 96, 62 L.Ed.2d 62 (1979); *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976), but defense counsel was able to effectively use the information at trial. *Johnson v. United States*, 544 A.2d 270, 275 (D.C.1988).

Similarly, we find no merit to appellant's contention that the trial judge erred by failing to impose sanctions for a Jencks Act violation when the government failed to turn over the handwritten notes of the Maryland police officer which were allegedly taken while interviewing a government witness, Mr. Krupnak. *See supra* note 1. Assuming there were notes, there is no indication that they contained "statements" under the Jencks Act. *See* 18 U.S.C. § 3500(e)(1)–(2) (1988). To be a statement within the statute, the transcription "must be a continuous, narrative recording rather than mere selective notations or excerpts from the oral statements." *Moore v. United States*, 353 A.2d 16, 18 (D.C.1976); *see Coleman v. United States*, 515 A.2d 439, 447

(D.C.), *cert. denied*, 481 U.S. 1006, 107 S.Ct. 1631, 95 L.Ed.2d 205 (1986). The notes allegedly taken by the detective appear to be selective notations from the interview, rather than a continuous narrative recording. Such notes as existed were, according to the government, incorporated into a summary in the detective's investigative report, which the appellant received prior to trial. Therefore, there is nothing to indicate that the trial judge abused his discretion in not imposing sanctions on the government. *See Slye v. United States*, 602 A.2d 135, 139 (D.C.1992); *see also United States v. Augenblick*, 393 U.S. 348, 355, 89 S.Ct. 528, 532, 21 L.Ed.2d 537 (1969); *Palermo v. United States*, 360 U.S. 343, 351–52, 79 S.Ct. 1217, 1224, 3 L.Ed.2d 1287 (1959).

Finally, we conclude, in light of our standard of review and previously decided cases, that there was sufficient evidence to support appellant's conviction of malicious destruction of property—the van was being driven in a reckless manner, and after hitting the truck, the van did not stop. *See Reynolds v. United States*, 587 A.2d 1080, 1084 (D.C.1991).