**Sean H. HENRY, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 95–CM–919.

District of Columbia Court of Appeals.

Submitted May 23, 2000.
Decided June 8, 2000.

William S. Rhyne, appointed by the court, was on the brief for appellant.

Wilma A. Lewis, United States Attorney, with whom John R. Fisher, Elizabeth Trosman, and Valinda Jones, Assistant United States Attorneys, were on the brief for appellee.

Before REID and GLICKMAN, Associate Judges, and KERN, Senior Judge.

PER CURIAM:

After a jury trial, appellant Sean H. Henry ("Henry") was convicted of carrying a pistol without a license ("CPWL"), in violation of D.C.Code § 22–3204.[1] Additionally, after a related bench trial, Henry was convicted of possession of an unregistered firearm ("UF"), in violation of §§ 6–2311, –2376; and unlawful possession of ammunition, in violation of §§ 6–2361, –2376. On appeal Henry contends that the trial judge committed plain error by withdrawing, *sua sponte*, the UF and UA charges from the jury because "[t]he Constitution requires that a jury trial be provided for charges whose maximum punishment is six months [, and] ... the UF and UA charges carried a maximum authorized penalty of more than six months' confinement." Henry also challenges the CPWL

1. Henry was tried with co-defendants John L. Aldridge ("Aldridge"), and Anthony Givens ("Givens"). They were also found guilty on all charges.

conviction, alleging that "a special unanimity instruction should have been given [, *sua sponte,*] to the jury [because] ... [he] offered legally and factually distinct defenses as to the two pistols." We reverse the UF and UA convictions, and affirm the CPWL conviction.

## FACTUAL SUMMARY

The record reflects that on June 4, 1994, at approximately 4:30 a.m., Officer Mark Robinson, of the Metropolitan Police Department ("MPD"), observed a green Plymouth automobile speeding and disobeying traffic signals while pursuing a burgundy vehicle near the intersection of 14th and G Street N.W., in the District of Columbia. Officer Robinson subsequently "accelerate[d] to catch up to [the vehicles] ... [and] initiated a traffic stop" of the Plymouth. After the officer stopped the Plymouth, the burgundy vehicle "made a U-turn within a block, pulled alongside [Officer Robinson's] vehicle and the occupants of [the burgundy] vehicle yelled out that the persons inside the [Plymouth] auto had guns." Officer Robinson called for back-up officers.

After United States Secret Service Officer Martin Karlavage arrived on the scene, as well as other responding MPD officers, Officers Karlavage and Robinson removed the occupants from the vehicle, and "looked inside" the Plymouth.[2] During this observation, the officers noticed a "[.]38 caliber [ ] firearm ... under the front passenger seat [that was] inside a sock [with] the rear end of it hanging out." Following this discovery, the officers conducted a search of the vehicle and found a "black ... 9 millimeter[ ] firearm ... under the right front passenger seat ...

towards ... the middle to the rear [of the seat]." The occupant's were then arrested. MPD Crime Scene Search Officer Ridley Durham testified that the .38 caliber handgun contained three rounds of ammunition, and the 9mm contained nine rounds of ammunition.

At trial, Henry and his co-defendant's testified[3] that they found the guns while urinating outside of a neighborhood nightclub, and intended to deliver the weapons to a "police station" in hopes of obtaining one hundred dollars for each weapon.[4] Henry claimed that, at the time he was stopped, he was attempting to obtain the license plate number of the burgundy vehicle because, just moments earlier, the occupants of that vehicle pursued his vehicle, demanding that he return their guns.

Following trial, Henry was found guilty on all counts and was sentenced to: one year in prison on the CPWL count; one year on the UF count; and one year on the UA count, execution of sentence suspended in favor of one year probation. Henry filed a timely appeal.

## ANALYSIS

■ The government concedes that, under *Jackson v. United States,* 498 A.2d 185, 188 (D.C.1985), Henry was entitled to have his UF and UA charges determined by a jury. We agree, and conclude that the trial judge plainly erred in removing the two charges from the jury's consideration. *See Blanton v. North Las Vegas,* 489 U.S. 538, 542, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989) ("a defendant is [constitutionally] entitled to a jury trial whenever the offense for which he is charged carries a maximum authorized prison term

---

2. Henry was identified as the driver of the vehicle. Co-defendant Aldridge was in the front passenger seat, and co-defendant Givens was in the right rear passenger seat.

3. Although Henry testified that he saw only one gun while urinating outside of the nightclub, he agreed that he "allowed [the co-defendant's] to bring [the] **guns** into [his]

car," and that he "knew the **guns** were in [his] car." (Emphasis added.)

4. Co-defendant Aldridge testified that he was informed that "Riddick Bowe or somebody was giving out [one] hundred dollars or something for guns." Aldridge appears to be referring to the MPD's "Gun Buy–Back Program."

**928**

of greater than six months"). Consequently, we reverse the UF and UA convictions.

 Henry's remaining argument is that due to the failure of the trial court to issue a special unanimity instruction, his "conviction and sentence should be vacated and the case remanded ... because the jury was not instructed that they must be unanimous [as to] which incident constituted the crime of which they were finding [Henry] guilty...." The government contends that "[s]ince there was no factual or legal distinction to be made between the two guns ... there was no need [for the trial court] to give a special unanimity instruction." We agree.

 "The requirement for a special unanimity instruction arises when the court cannot deduce from the record whether the jury must have agreed upon one particular set of facts." *Simms v. United States,* 634 A.2d 442, 445 (D.C. 1993). Therefore, in determining whether the unanimity requirement applies, this court must decide whether the evidence "show[s] either legally or factually separate incidents." *Id.* (citing *Scarborough v. United States,* 522 A.2d 869, 873 (D.C. 1987) (en banc) (other citation omitted)). We conclude that a special unanimity instruction was not required in this case because there was no factual or legal distinction to be made with regard to Henry's simultaneous possession of the .38 caliber and 9mm handguns. *See Brown v. United States,* 542 A.2d 1231, 1234 (D.C.1988) ("because the simultaneous possession of two separate quantities of the same controlled substance constitutes only one criminal act, there would ordinarily be no unanimity problem"); *Cormier v. United States,* 137 A.2d 212, 216–17 (D.C.1957) (simultaneous carrying of two pistols constitutes only one offense under D.C.Code § 22–3204); *Simms, supra,* 634 A.2d at 445. Nor did Henry present different defenses regarding the two guns. His sole defense at trial was that he possessed the weapons innocently, and only as a "favor to [his] friends." Thus, we find no error,

much less plain error. *See Green v. United States,* 544 A.2d 714, 715 (D.C.1988).

Accordingly, for the foregoing reasons, we affirm in part, and reverse in part, the judgment of the trial court.

*So ordered.*