(11 P.3d 506)
No. 83,147

STATE OF KANSAS, *Appellee,* v. JIMMY DEAN HILL, JR., *Appellant.*

Opinion filed October 6, 2000.

*Janine Cox,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Eric W. Godderz,* county attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before GREEN, P.J., GERNON, J., and PHILIP C. VIEUX, District Judge, assigned.

VIEUX, D.J.: Jimmy Hill, Jr., appeals his conviction for rape, K.S.A. 21-3502, aggravated indecent liberties with a child, K.S.A. 21-3504(a)(2)(A), and aggravated indecent solicitation of a child, K.S.A. 21-3511(a). We affirm the trial court.

The State charged Hill with rape, aggravated indecent liberties with a child, and aggravated indecent solicitation of a child based on the events of May 18, 1998. The facts of the case will be revealed only as is necessary for the discussion of the issues of the case.

At trial, B.M. (d.o.b. 9-21-84) testified that she returned home after a friend's graduation, watched television, and prepared for bed. Hill, who was a friend of B.M.'s father, called the house and was informed B.M.'s father was not at home. Hill entered the home, found B.M. in the bathroom, and said, "Hey, I'm here." He kissed her on the mouth with his tongue. Hill lifted up her sports bra and put his hands down inside her pants and underwear from behind. One finger penetrated B.M.'s vagina. This was repeated from the front. B.M. repeatedly told Hill to stop and go home because her father would be home soon. B.M. was able to push Hill back into the bathtub.

Hill got up, went behind B.M., and kissed her again. He lifted up her sports bra and kissed her chest. B.M. reiterated that her father would be home soon and walked out of the bathroom. Hill followed B.M. into the kitchen and asked her "where are we going to get it on" and started kissing and touching her breasts and inserted his finger into her vagina again. B.M. went to the living room, where Hill tried to push her on the couch. She repeated her father was going to be home soon. He kissed her and sat down on the couch. B.M. walked to the bathroom, and Hill agreed he had to leave and left the house.

B.M.'s cross-examination revealed inconsistencies between her testimony regarding what may have taken place in the kitchen and

her prior statements to the police. Her statements did not mention any penetration had taken place in the kitchen.

The jury found Hill guilty of all charges.

Hill claims the charges of rape and aggravated indecent liberties with a child are multiplicitous because the elements are the same and the charged offenses arose out of a single continuous act. Whether charges are multiplicitous is a question of law over which this court has unlimited review. *State v. Vontress*, 266 Kan. 248, 255, 970 P.2d 42 (1998).

K.S.A. 21-3107 allows charging a defendant with multiple violations arising from a single transaction when the same conduct may establish the commission of more than one crime.

"The test concerning whether a single transaction may constitute two separate and distinct offenses is whether the same evidence is required to sustain each charge. If not, the fact that both charges relate to and grow out of the same transaction does not preclude convictions and sentences for both charges. [Citation omitted.] Multiplicity does not depend upon whether the facts proved at trial are actually used to support conviction of both offenses charged; rather, it turns upon whether the elements of proof necessary to prove one crime are also necessary to prove the other. [Citation omitted.]" 266 Kan. at 256.

Rape, as charged herein, is sexual intercourse with a child who is under 14 years of age. K.S.A. 21-3502(a)(2). Based on the evidence, the jury was required to find that at the time of the offense, the child was under 14 years of age, and sexual intercourse took place on May 18, 1998, in Osage County, Kansas. Sexual intercourse is defined as "any penetration of the female sex organ by a finger, the male sex organ or any object. Any penetration, however slight, is sufficient to constitute sexual intercourse." K.S.A. 21-3501(1).

In contrast, aggravated indecent liberties with a child is engaging with a child who is under 14 years of age in any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both. K.S.A. 21-3504(a)(3)(A). Based on the evidence, the jury was required to find (1) the defendant lewdly fondled or touched a person; (2) the person touched was a child; (3) the defendant touched with the intent

of arousing or satisfying the sexual desires of the child, himself, or both; (4) the child was at the time of the offense, under 14 years of age; and (5) the offenses occurred on May 18, 1998, in Osage County, Kansas.

The elements of aggravated indecent liberties are not necessarily proved if the elements of rape are proved. *State v. Belcher,* 269 Kan. 2, 4 P.3d 1137 (2000). Moreover, charges are not multiplicitous when the offenses occur at different times and in different places. *State v. Long,* 26 Kan. App. 2d 644, 645, 993 P.2d 1237 (1999), *rev. denied* 268 Kan. 892 (2000). According to *Long,* since the offenses in the present case took place in the bathroom and in the kitchen, they are not multiplicitous. As a result, Hill's argument fails.

Next, Hill contends that the trial court erred in failing to instruct the jury that its verdict must be unanimous as to which of the two acts of digital penetration constituted the crime of rape.

Jurisdictions fall into two camps regarding juror unanimity in multiple acts cases. In one camp, failing to give the specific unanimity question results in structural error mandating the appellate court to reverse and remand the case. See *State v. Arceo,* 84 Hawaii 1, 32-33, 928 P.2d 843 (1996) (defendant's constitutional right to a unanimous verdict violated unless the prosecutor elects the specific act it is relying on to establish the crime, or a specific unanimity instruction is given); *Commonwealth v. Conefrey,* 420 Mass. 508, 516, 650 N.E.2d 1268 (1995) (harmless error analysis inapplicable); and *State v. Brown,* 762 S.W.2d 135, 137 (Tenn. 1988) (requiring election to avoid possible juror splits).

Structural errors "are so intrinsically harmful as to require automatic reversal (*i.e.,* 'affect substantial rights') without regard to their effect on the outcome." *Neder v. United States,* 527 U.S. 1, 7, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999). The United States Supreme Court has found errors to be structural and require automatic reversal in very limited cases. See, *e.g., Johnson v. United States,* 520 U.S. 461, 468 (1997) (citing *Gideon v. Wainwright,* 372 U.S. 335, 9 L.Ed. 2d 799, 83 S. Ct. 792 (1963) (complete denial of counsel); *Sullivan v. Louisiana,* 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993) (defective reasonable doubt instruction);

*Vasquez v. Hillery*, 474 U.S. 254, 88 L. Ed. 2d 598, 106 S. Ct. 617 (1986) (racial discrimination in selection of grand jury).

Other jurisdictions apply a version of harmless error analysis whereby reversal is not automatic. In those jurisdictions, there is a common theme concerning potential juror confusion and resolving the issue of whether the acts were legally and factually separate incidents.

Several federal courts of appeal, for example, have held that a general unanimity instruction will not suffice where there exists a genuine possibility of juror confusion. *United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992) (specific unanimity instruction required "when there is a genuine risk of juror confusion or of conviction resulting from different jurors concluding the defendant committed different acts"); *United States v. Schiff*, 801 F.2d 108, 114-115 (2d Cir. 1986), *cert. denied* 480 U.S. 945 (1987) (general unanimity instruction sufficient to ensure unanimous verdict unless "complexity of the evidence or other factors create a genuine danger of jury confusion"); *United States v. Jackson*, 879 F.2d 85, 89 (3d Cir. 1989) (specific unanimity instruction not necessary where evidence not complex); *United States v. Horton*, 921 F.2d 540, 546 (4th Cir. 1990) (specific unanimity instruction not necessary where danger of jury confusion minimal and evidence not complex); *United States v. Sanderson*, 966 F.2d 184, 187 (6th Cir. 1992) (specific unanimity instruction not necessary unless a count is extremely complex, there is variance between the indictment and the proof at trial, or there is a tangible risk of jury confusion); *United States v. Montanye*, 962 F.2d 1332, 1341 (8th Cir.); *United States v. Gilley*, 836 F.2d 1206, 1211 (9th Cir. 1988) (specific unanimity instruction required where case involved sufficiently complex set of facts); *United States v. Hager*, 969 F.2d 883, 891 (10th Cir.), *cert. denied* 506 U.S. 904 (1992) (general unanimity instruction sufficient where evidence "not so complex that there was a genuine possibility of juror confusion").

The District of Columbia Court of Appeals provides useful definitions to legally separate and factually separate incidents. Incidents are legally separate when "the appellant presents different defenses to separate sets of facts, or when the court's instructions

are ambiguous, but tend to shift the legal theory from a single incident to two separate incidents." *Simms v. U.S.*, 634 A.2d 442, 445 (D.C. 1993) (citing *Gray v. United States*, 544 A.2d 1255, 1257 (D.C. 1988). Incidents are "factually separate when independent criminal acts have occurred at different times, or when a subsequent criminal act is motivated by 'a fresh impulse.' " *Simms*, 634 A.2d at 445.

The District of Columbia, New Mexico, and New Hampshire hold the requirement for a special unanimity instruction arises when the court cannot deduce from the record whether the jury must have agreed upon one particular set of facts. See *Horton v. U.S.*, 541 A.2d 604, 611 (D.C. App. 1988); *State v. Smith*, 144 N.H. 1, 736 A.2d 1236 (N.H. 1999) (no genuine possibility of juror confusion as to culpable act); *State v. Dobbs*, 100 N.M. 60, 665 P.2d 1151 (1983) (declining to speculate about possible nonunanimous jury verdict in absence of confusion). Moreover, for the instruction to apply in D.C., evidence must show either legally or factually separate events. *Simms v. U.S.*, 634 A.2d at 445.

The Michigan Supreme Court held that when evidence of multiple acts are presented, the trial court is required to instruct the jury that it must unanimously agree on the same specific act if the acts are *materially distinct* or if there is reason to believe the jurors may be *confused* or disagree about the factual basis of the defendant's guilt. *People v. Cooks*, 446 Mich. 503, 530, 521 N.W.2d 275 (1994). In *Cooks*, the defendant was charged with one count of first-degree criminal sexual conduct, but the victim's testimony at trial referred to three incidents of sexual penetration. The *Cooks* court affirmed the conviction because the alleged acts were materially identical.

The Wisconsin Supreme Court held that where crimes are conceptually similar, a unanimity instruction is not required. *State v. Lomagro*, 113 Wis. 2d 582, 592-93, 335 N.W.2d 583 (1983). Lomagro was charged with one count of sexual assault but testimony of the victim indicated six acts of sexual intercourse which included penis-vagina intercourse and fellatio. The Wisconsin Supreme Court noted in its opinion that the Wisconsin Legislature had previously determined these acts to be conceptually similar. Although

the court found the six acts to be one continuous event, it concluded the jury did not have to be unanimous as to which specific act the defendant committed in order to convict because the acts were conceptually similar. 113 Wis. 2d at 595.

In Washington, the Supreme Court held that where a trial court fails to instruct the jury that all jurors must agree on a single act which formed the basis of a conviction, constitutional error occurs that would not be deemed harmless unless no rational trier of fact could have had or entertained a reasonable doubt that each incident supported conviction. *State v. Kitchen,* 110 Wash. 2d 403, 756 P.2d 105 (1988).

In Alabama, where only generic evidence on a series of acts was introduced, the absence of a specific unanimity instruction was deemed harmless error. *R.L.G., Jr. v. State,* 712 So. 2d 348, 368 (Ala. Crim. App. 1997). In *R.L.G.,* the evidence showed a continuing pattern of sexual abuse of young children without identifying any separate and distinct incidents of abuse. Recognizing the problem with strict election in cases involving child molestation, the court modified the "either/or rule" (either elect the act, or there must be jury unanimity to all acts) in cases where there is only generic evidence. In *R.A.S. v. State,* 718 So. 2d 117 (Ala. 1998), the Alabama Supreme court expanded the rule in *R.L.G.* to include cases with evidence of specific acts.

In *State v. Scherzer,* 301 N.J. Super. 363, 478-479, 694 A.2d 196 (1997), evidence showed four different acts of sexual penetration but only two counts were charged. Although the jury was not instructed with a specific unanimity instruction, the court found acts of sexual penetration involving a bat, broom, stick, the defendant's fingers, and fellatio conceptually similar enough not to require a specific unanimity instruction. The court noted no evidence of jury confusion capable of producing an unjust result. 301 N.J. Super. at 480.

Although our Supreme Court has not articulated the standard of review, prior Kansas Court of Appeals decisions suggest this kind of error is subject to structural error review and requires reversal. *State v. Wellborn,* 27 Kan. App. 2d 393, Syl. ¶ 1, 4 P.3d 1178

(2000); *State v. Barber,* 26 Kan. App. 2d 330, 331, 988 P.2d 250 (1999).

The *Barber* holding was due in part to *Sullivan v. Louisiana,* 508 U.S. 275. The facts in *Sullivan* make it distinguishable from the facts in our present case. In *Sullivan,* the trial court gave a constitutionally defective jury instruction on "reasonable doubt." A very similar instruction previously had been held to violate the defendant's Fifth and Sixth Amendment rights to have the charged offense proved beyond a reasonable doubt in *Cage v. Louisiana,* 498 U.S. 39, 112 L.Ed. 2d 339, 111 S. Ct. 328 (1990). The *Sullivan* court concluded the error was not subject to harmless error analysis because it "vitiates *all* the jury's findings" and produces "consequences that are necessarily unquantifiable and indeterminate." (Emphasis added.) 508 U.S. at 281-82.

We find the authority applying harmless error to be persuasive and adopt the following test that effectively balances the tension between the defendant's right to a unanimous jury verdict and judicial economy.

After the court establishes the jury was presented with evidence of multiple acts, the first step is to determine whether there is a possibility of jury confusion from the record or if evidence showed either legally or factually separate incidents. Incidents are legally separate when the appellant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a subsequent criminal act is motivated by "a fresh impulse." *Simms v. U.S.,* 634 A.2d at 445-46.

When jury confusion is not shown under the first step of the above analysis, the second step is to apply a harmless error analysis to determine if the error was harmless beyond a reasonable doubt with respect to all acts.

In applying this analysis to the present case, the record contains the following evidence: Hill digitally penetrated B.M.'s vagina in the bathroom. B.M. repeatedly told him to stop and managed to push Hill into the tub. After she walked out of the bathroom and

into the kitchen, Hill followed her and again inserted his finger into her vagina. At trial, Hill did not testify but generally denied penetrating B.M. According to the above definitions, these events are not legally or factually separate incidents and survive the first step in ensuring no possibility of jury confusion.

In applying a harmless error review, since there was no extrinsic evidence to support the charges, the sole issue was the credibility of the victim's account of the two alleged penetrations. The evidence in its entirety offered absolutely no possibility of jury disagreement regarding the appellant's commission of any of these acts. By the jury's rejection of the appellant's general denial, the court could unequivocally say there was no rational basis by which the jury could have found that the defendant committed one of the incidents but did not commit the other, and, therefore, the trial court's error was harmless beyond a reasonable doubt.

This holding should not be interpreted to give prosecutors carte blanche to rely on harmless error review, and it is strongly encouraged that prosecutors elect a specific act or the trial court issue a specific unanimity instruction. In many cases involving several acts, the requirement that an appellate court conclude beyond a reasonable doubt as to all acts will not be found harmless.

It should be acknowledged that a prior Kansas Supreme Court case leaves open the possible interpretation that in multiple acts cases a general unanimity instruction followed by polling the jury is an effective cure to the lack of a specific unanimity instruction. See *State v. Smith*, 268 Kan. 222, 230, 993 P.2d 1213 (1999). Polling the jury is insufficient to cure a multiple acts problem unless the jurors are polled specifically to their agreement on the same incident.

Next, Hill challenges the sufficiency of the evidence. Our standard of review is as follows:

" 'When the sufficiency of the evidence is challenged, the standard of review on appeal is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational fact-finder could have found the defendant guilty beyond a reasonable doubt.' *State v. Graham*, 247 Kan. 388, Syl. ¶ 5, 799 P.2d 1003 (1990)." *State v. Evans*, 251 Kan. 132, 135-36, 834 P.2d 335 (1992).

"When a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, it is not the function of this court to weigh the evidence or pass on the credibility of the witnesses." *Wisker v. Hart*, 244 Kan. 36, 37, 766 P.2d 168 (1988).

Considering the evidence presented at trial, giving full play to the factfinder's duty to assess the credibility of witnesses and weigh the evidence, we determine that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.

Next, Hill complains of prejudicial comments made by the prosecutor during closing argument. In *State v. Cravatt*, 267 Kan. 314, 979 P.2d 679 (1999), our Supreme Court set out the general rules relative to claims of prosecutorial misconduct in closing arguments as follows:

"In determining that a prosecutor's improper remarks made in closing argument are not so gross and flagrant as to prejudice the jury against the accused and deny him or her a fair trial, the reviewing court must be able to find that when viewed in light of the record as a whole, the error had little, if any, likelihood of changing the result of the trial. This is a harmless error analysis. The court must be able to declare beyond a reasonable doubt that the error was harmless. Each case must be scrutinized on its particular facts to determine whether prosecutorial misconduct is harmless error or plain error when viewed in the light of the trial record as a whole." 267 Kan. at 332.

Hill maintains that the prosecution made two statements to the jury during closing arguments regarding matters that were not in evidence. The first of these complained-of statements regarded the prosecution's assertion that a witness at the trial changed his story in order to fit the account of the defendant. This statement, apparently, was predicated upon a slight difference between an earlier statement recorded in a police report and the actual testimony of the witness. That portion of the police report was revealed to the factfinder during the course of questioning at trial. Hill complained a second statement was not supported by the facts presented. The actual statement made was "Julie Miller lives in his house." Miller, the ex-wife of the defendant, testified that at the time of trial, she lived in the trailer the defendant used to live in.

As to the first statement, the prosecutor has the right to make fair comment on the evidence. Obviously, the prosecutor's assess-

ment of the facts presented does not have to be favorable to the defendant. In the second statement, the prosecutor has a right to point out a possible bias that a witness may have for testifying. Likewise, his assessment of the situation does not need to be agreeable to the defendant. The prosecutor is entitled to considerable latitude in arguing the case to a jury.

In the instant case, the remarks made were not so far from the evidence presented as to be considered a gross and flagrant act capable of prejudicing the jury.

Hill further complains that the prosecutor improperly appealed to the personal fears and sense of community safety with a statement regarding his own children and telling the jury not to let the defendant "get away with this."

An examination of the record reveals that the statement regarding the children of the prosecutor, as complained of by Hill, may be somewhat out of context. In any event it was not so flagrant or gross as to show prosecutorial misconduct or any prejudicial effect upon the jury. The statement regarding not letting the defendant "get away with this" is of no more prejudicial effect than to simply ask the jury to find the defendant guilty. As a result, we conclude that the evidence supports Hill's convictions beyond a reasonable doubt and declare that the prosecutor's improper comments, if any, were harmless error.

Affirmed.