No. 83,147

STATE OF KANSAS, *Appellee*, v. JIMMY HILL, JR., *Appellant*:
(26 P.3d 1267)

Opinion filed July 20, 2001.

*Reid T. Nelson*, assistant appellate defender, argued the cause, and *Janine Cox*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the brief for appellant.

*Gary L. Foiles*, county attorney, argued the cause, and *Eric W. Godderz*, former county attorney, and *Carla J. Stovall*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: This case considers the appropriate lens for appellate review when focusing on defendant's claims of multiplicity and failure to give a juror unanimity instruction in a multiple acts case. Defendant Jimmy Hill, Jr., appeals his convictions for rape, aggravated indecent liberties with a child, and aggravated indecent solicitation of a child. K.S.A. 21-3502(a)(2); K.S.A. 21-3504(a)(3)(A); K.S.A. 21-3511(a). Hill was sentenced to a controlling term of 200 months. The Court of Appeals affirmed Hill's convictions. *State v. Hill*, 28 Kan. App. 2d 28, 11 P.3d 506 (2000).

Our jurisdiction is under K.S.A. 20-3018(b). We granted Hill's petition for review to resolve a conflict among various Court of Appeals opinions which have differed in applying either harmless error or structural error as the standard for appellate analysis in multiple acts cases.

The issues raised by Hill in his petition for review, underlying the selection of the appropriate lens for appellate review here, are whether: (1) the district court erred by failing to instruct the jury regarding unanimous verdicts; (2) the charge of rape is multiplicitous with the charge of aggravated indecent liberties with a child; and (3) Hill's conviction for aggravated indecent solicitation of a child is supported by sufficient evidence.

The Court of Appeals applied a harmless error analysis; we agree. Finding no error, we affirm.

## FACTS

Hill's convictions were based on the evening events of May 18, 1998, at the home of B.M., a 13-year-old girl. At trial, B.M. testified that she returned home after a friend's eighth grade graduation, watched television, and prepared for bed. At 9:30 p.m., she called her father and told him that she and her 10-year-old brother were home. Hill, who was a friend of B.M.'s father, called the house. B.M. told him that her father was not there. Hill later entered the home, found B.M. in the bathroom, and said, "Hey, I'm here." B.M. testified that she thought he arrived after 10 p.m. He grabbed her waist and kissed her on the mouth with his tongue. B.M. tried to push him away. Hill lifted up her sports bra and from behind put his hand inside her pants and underwear. One finger penetrated B.M.'s vagina. He repeated the act from the front. B.M. repeatedly told Hill to stop and to leave because her father would be home soon. B.M. pushed Hill against the side of the bathtub.

As B.M. started to leave the bathroom, Hill got up, turned her around from behind, and kissed her again. He lifted up her sports bra and kissed her chest. B.M. repeated that her father would be home soon and walked out of the bathroom. Hill followed B.M. down the hallway to the kitchen and asked her, "So where are we going to get it on?" When B.M. got to the kitchen, Hill started kissing her and touching her breasts. He inserted his finger into her vagina again. B.M. went to the living room, where Hill tried to push her onto the couch. She repeated that he needed to leave and that her father was going to be home soon. He kissed her and sat down on the couch. B.M. walked to the bathroom, and Hill left the house.

B.M.'s cross-examination revealed inconsistencies between her testimony regarding what may have taken place in the kitchen and her previous statements to the police. Her statements to police did not mention that any penetration of her vagina took place in the kitchen.

Hill did not testify. In a written statement to police, he said that he had stopped by B.M.'s house at around 10:30 p.m. on the night in question, but he left when B.M. told him that her father was not home. Hill told Officer Loquist that he then stopped at an ex-girlfriend's house and was there for about an hour. The ex-girlfriend testified that Hill called her around 9:49 p.m. and arrived at her house around 10:45 p.m. She said he left around midnight. Hill's friend Ryan Hull testified that Hill had been at his house on the night in question and left around 10:30 p.m.

The jury found Hill guilty as charged.

## DISCUSSION
### The Rape Charge

Hill argues that the district court committed structural error by failing to instruct the jury that its verdict must be unanimous regarding which of the two acts of digital penetration constituted the rape. B.M. testified that Hill penetrated her vagina with his finger both in the bathroom and in the kitchen. Until the day before trial, the State was unaware that a second penetration had allegedly occurred in the kitchen. Thus, Hill was charged with only one count of rape (the bathroom incident).

Here, the district court gave a general unanimity instruction. It also gave the following instruction:

"Each crime charged against the defendant is a separate and distinct offense. You must decide each charge separately on the evidence and law applicable to it, uninfluenced by your decision as to any other charge. The defendant may be convicted or acquitted on any or all of the offenses charged. Your finding as to each crime charged must be stated in a verdict form signed by the presiding juror."

The court instructed the jury on rape and that sexual intercourse was a required element of rape. However, the court did not instruct the jury that its verdict must be unanimous regarding which of the two acts of digital penetration constituted the rape. Hill keys on the failure to so instruct, labeling the failure structural error mandating reversal.

At this point in the opinion, a review of the transcript is appropriate to show how the evidence of the digital penetration in the kitchen was heard by the jury. The State in its direct examination

of B.M. did not ask about penetration in the kitchen. B.M.'s testimony on direct was:

> "A. . . . [W]hen I got into the kitchen he started kissing me again.
> "Q. Was he touching you again?
> "A. Yes.
> "Q. Was he touching your breasts again?
> "A. Yes, but my sports bra wasn't lifted up.
> "Q. So he's touching you on the outside of that?
> "A. Yes.
> "Q. Was he touching you below also?
> "A. Yes.
> "Q. How did it stop?
> "A. I backed away from him.
> "Q. And what happened?
> "A. I walked—I was going to grab the phone and I decided not to because I was scared he might do something to me and so I walked into the living room and he tried to push me down on the couch and I said, 'Jimmer, you need to leave, my dad is going to be home,' and he kissed me and then he sat down on the couch and I went to walk into the bathroom and I stopped at the end of the hallway and he said, 'Yeah, I guess I do,' and he got up and left."

The kitchen digital penetration testimony occurred during B.M.'s cross-examination. The questioning from Hill's counsel developed this way:

> "Q. Did you stay in the kitchen?
> "A. I stood in the middle of the kitchen, yes, told him he needs to leave.
> "Q. Did Mr. Hill come into the kitchen after you?
> "A. Yes, he did.
> "Q. And what did he do there?
> "A. He kissed me repeatedly, lifted my sports bra up, and he did the same exact thing he did in the bathroom except he did not kiss my chest area.
> "Q. Did he—did he insert his finger in your vagina again?
> "A. Yes, he did.
> "Q. Both from the back and the front?
> "A. Just the back."

The State did not reference the kitchen rape in its closing argument.

Hill contends his right to a unanimous verdict was violated by the district court's failure to give a unanimity instruction with respect to the multiple acts of alleged rape. Hill failed to request such an instruction at trial.

Generally, when no request or objection is made, we reverse only if the failure to give an instruction was clearly erroneous. See *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995). The Court of Appeals here found that the district court erred in failing to give a unanimity instruction but concluded that the error was harmless. Hill notes that the Court of Appeals' holding conflicts with *State v. Wellborn*, 27 Kan. App. 2d 393, 4 P.3d 1178, *rev. denied* 269 Kan. 940 (2000), and *State v. Barber*, 26 Kan. App. 2d 330, 988 P.2d 250 (1999). *Wellborn* and *Barber* applied a structural error analysis in reversing and remanding for new trials where unanimity instructions were not given in multiple acts cases.

Resolution of the harmless error-structural error conflict involves a question of law, over which we have unlimited review. See *State v. Belcher*, 269 Kan. 2, 4, 4 P.3d 1137 (2000).

The Court of Appeals in an extensive analysis recognized the existence of two views regarding juror unanimity in multiple acts cases. One view holds that the failure to give the specific unanimity question results in structural error, which requires the appellate court to reverse and remand the case. See *State v. Arceo*, 84 Hawaii 1, 32-33, 928 P.2d 843 (1996) (defendant's constitutional right to a unanimous verdict is violated unless the State elects the specific act it is relying on to establish the crime or a specific unanimity instruction is given); *Hill*, 28 Kan. App. 2d at 31 (citing concurring case law in other jurisdictions).

Structural errors "are so intrinsically harmful as to require automatic reversal (*i.e.,* 'affect substantial rights') without regard to their effect on the outcome." *Neder v. United States*, 527 U.S. 1, 7, 144 L. Ed. 2d 35, 119 S. Ct. 1827 (1999). Automatic reversal is required in limited situations. See, *e.g., Johnson v. United States*, 520 U.S. 461, 468-69, 137 L. Ed. 2d 718, 117 S. Ct. 1544 (1997) (citing *Gideon v. Wainwright*, 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 [1963]) (complete denial of counsel); *Sullivan v. Louisiana*, 508 U.S. 275, 282, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993) (defective reasonable doubt instruction); *Vasquez v. Hillery*, 474 U.S. 254, 264, 88 L. Ed. 2d 598, 106 S. Ct. 617 (1986) (racial discrimination in selection of grand jury). However, the vast majority of constitutional errors fall within the broad category of trial

error subject to harmless error review. *People v. Flood*, 18 Cal.4th 470, 499-500, 76 Cal.Rptr.2d 180, 957 P.2d 869 (1998) (citing *Chapman v. California*, 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824 [1967]).

Other jurisdictions have applied a version of the harmless error analysis where reversal is not automatic. In those jurisdictions, there is a common theme regarding potential juror confusion. See *United States v. Sayan*, 968 F.2d 55, 65 (D.C. Cir. 1992) (specific unanimity instruction required "when there is a genuine risk of juror confusion or of conviction resulting from different jurors concluding the defendant committed different acts"); *United States v. Schiff*, 801 F. 2d 108, 114-15 (2d Cir. 1986), *cert. denied* 480 U.S. 945 (1987) (general unanimity instruction is sufficient to ensure a unanimous verdict unless "complexity of the evidence or other factors create a genuine danger of jury confusion"); *Hill*, 28 Kan. App. 2d at 32 (citing concurring case law in other jurisdictions).

In using a harmless error analysis, the Court of Appeals here relied upon the *Simms v. U.S.*, 634 A.2d 442, 445 (D.C. 1993), definitions of "legally separate" and "factually separate" incidents. Incidents are legally separate when "the appellant presents different defenses to separate sets of facts, or when the court's instructions are ambiguous, but tend to shift the legal theory from a *single incident* to two *separate incidents*." (Emphasis added.) (Citing *Gray v. U.S.*, 544 A.2d 1255, 1257 [D.C. 1988]). Incidents are "factually separate when independent criminal acts have occurred at different times, or when a subsequent criminal act is motivated by 'a fresh impulse.' " *Simms*, 634 A.2d at 445.

The District of Columbia, New Hampshire, and New Mexico have concluded that the requirement for a special unanimity instruction arises when the court cannot deduce from the record whether the jury must have agreed upon one particular set of facts. See *Horton v. U.S.*, 541 A.2d 604, 610-11 (D.C. 1988) (a unanimity instruction was required where multiple factual scenarios may have been deduced from the evidence depending upon which, if any, of the defendant's defenses the jury may have chosen to accept); *State v. Smith*, 144 N.H. 1, 9, 736 A.2d 1236 (1999) (one act, not multiple acts, and no genuine possibility of juror confusion as to the

culpable act); *State v. Dobbs*, 100 N.M. 60, 71, 665 P.2d 1151, *cert. denied* 100 N.M. 53 (1983) (declining to speculate about a possible nonunanimous jury verdict in the absence of confusion).

The Michigan Supreme Court has held that when evidence of multiple acts is presented, the district court is to instruct the jury that it must unanimously agree on the same specific act, if the acts are materially distinct or if there is a reason to believe the jurors may be confused or disagree about the factual basis of the defendant's guilt. A general instruction to the jury that its verdict must be unanimous was sufficient where evidence offered to support three alleged acts of penetration was materially identical. *People v. Cooks*, 446 Mich. 503, 530, 521 N.W. 2d 275 (1994). In *State v. Lomagro*, 113 Wis. 2d 582, 592-93, 335 N.W.2d 583 (1983), the Wisconsin Supreme Court found that where crimes are conceptually similar, a unanimity instruction is not required. *Lomagro* concluded that the jury did not have to be unanimous about which specific act Lomagro committed to convict because the acts were conceptually similar. 113 Wis. 2d at 598.

In discussing precedent in Alabama and New Jersey, the Court of Appeals said:

"In Alabama, where only generic evidence on a series of acts was introduced, the absence of a specific unanimity instruction was deemed harmless error. *R.L.G., Jr. v. State*, 712 So. 2d 348, 368 (Ala. Crim. App. 1997). In *R.L.G.*, the evidence showed a continuing pattern of sexual abuse of young children without identifying any separate and distinct incidents of abuse. Recognizing the problem with strict election in cases involving child molestation, the court modified the 'either/or rule' (either elect the act, or there must be jury unanimity to all acts) in cases where there is only generic evidence. In *R.A.S. v. State*, 718 So. 2d 117 (Ala. 1998), the Alabama Supreme court expanded the rule in *R.L.G.* to include cases with evidence of specific acts.

"In *State v. Scherzer*, 301 N.J. Super. 363, 478-479, 694 A.2d 196 (1997), evidence showed four different acts of sexual penetration but only two counts were charged. Although the jury was not instructed with a specific unanimity instruction, the court found acts of sexual penetration involving a bat, broom, stick, the defendant's fingers, and fellatio conceptually similar enough not to require a specific unanimity instruction. The court noted no evidence of jury confusion capable of producing an unjust result. 301 N.J. Super. at 480." 28 Kan. App. 2d at 34.

The Kansas Court of Appeals Decisions

Two recent cases, *State v. Wellborn*, 27 Kan. App. 2d 393, and *State v. Barber*, 26 Kan. App. 2d 330, held that failing to give a unanimity instruction was structural error, requiring reversal. Wellborn appealed his convictions for rape and four counts of aggravated indecent liberties with a child. Counts 1 and 2 alleged single acts occurring between May and July 1995; Counts 3 and 4 charged acts between January and June 1996; and Count 5 charged activity in April 1997. The victim testified to numerous incidents. Wellborn requested a unanimity instruction. The State did not elect a specific act for each count, nor did the district court instruct the jury on the need for unanimity regarding the specific act supporting the convictions for each count. The *Wellborn* court relied upon *Barber*. 27 Kan. App. 2d at 394.

In *Barber*, the defendant was charged with criminal possession of a firearm. The evidence showed that Barber possessed a gun during a disturbance and later that day returned with another gun in his possession. The jury was not instructed that all jurors must agree that the same criminal act, possession of the first gun or the second gun, had been proved beyond a reasonable doubt. The *Barber* court concluded that *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994), "implicitly acknowledged [a unanimity] instruction is necessary to insure jury unanimity in multiple acts cases." 26 Kan. App. 2d at 331. The *Barber* court said: "[N]o amount of analysis would ever permit us to say the jury unanimously agreed to the underlying act supporting the conviction. Under such circumstances, the trial court's failure to give a multiple acts instruction constitutes structural error . . . ." 26 Kan. App. 2d at 331. Compare *State v. Daniels*, 28 Kan. App. 2d 364, 17 P.3d 373 (2000) (applying the harmless analysis); *State v. Banks*, 28 Kan. App. 2d 829, Syl. ¶ 1, 22 P.3d 1069 (2001) ("When the factual circumstances of a crime involve a short, continuous, single incident comprised of several acts individually sufficient for conviction, jury unanimity requires only that the jury agree to an act of the crime charged, not which particular act."); *State v. Fulton*, 28 Kan. App. 2d 815, Syl. ¶ 6, 23 P.3d 167 (2001) ("A continuous incident

where a victim is alleged to have been cut more than once by the defendant is not a multiple acts situation requiring a unanimity instruction.").

Hill also relies upon *State v. Timley*, 255 Kan. 286, Syl. ¶ 2, 875 P.2d 242 (1994), where we said: "In multiple acts cases, several acts are alleged and any one of them could constitute the crime charged." This statement arose from our discussion of Timley's claim that his case was a multiple acts case, citing *State v. Kitchen*, 110 Wash. 2d 403, 756 P.2d 105 (1988). We said:

"[*Kitchen*] noted the rule that '[w]hen the prosecution presents evidence of several acts that could form the basis of one count charged, either the State must tell the jury which act to rely on in its deliberations or the court must instruct the jury to agree on a specific criminal act.' 110 Wash. 2d at 409.

"Timley characterizes his case as a 'multiple acts' case. What he ignores is the distinction made by the *Kitchen* court between alternative means cases and multiple acts cases." 255 Kan. at 289.

*Timley* is not controlling here, however, because it is an alternative means case, not a multiple acts case. Timley was convicted of sexual acts under the premise that they were committed when the victim was overcome by force *or* fear. He argued that his case was a multiple acts case and that the jury instructions deprived him of a unanimous verdict. We found that Timley ignored the distinction between an alternative means case and a multiple acts case. The jury could determine that each sexual act was the result of either force or fear. The district court did not err by including both alternative means in one jury instruction. 255 Kan. at 290.

The question of whether to analyze the lack of unanimity instruction in a multiple acts case under a structural error approach or a harmless error approach is obviously unsettled. The Chief Judge of the Washington Court of Appeals concludes in analyzing the cases from his jurisdiction:

"In those cases in which the defense to charges based on multiple acts is a general denial, differentiation among a number of events is not required of the jury and therefore is not an issue in controversy. The jury either accepts the victim's testimony as to all and convicts, or it accepts the defendant's denial and acquits on all charges. The failure to give a unanimity instruction in those instances is harmless error; it does not relate to an issue in controversy." Sweeney, *An*

*Analysis of Harmless Error in Washington: A Principled Process*, 31 Gonz. L. Rev. 277, p. 302 (1996).

We reject the structural error approach and apply a two-step harmless error analysis to Hill's contention that a unanimity instruction should have been given. In applying a harmless error analysis, the first step is to determine whether there is a possibility of jury confusion from the record or if the evidence showed either legally or factually separate incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by "a fresh impulse." When jury confusion is not shown under the first step, the second step is to determine if the error in failing to give a unanimity instruction was harmless beyond a reasonable doubt with respect to all acts.

Here, the record shows that Hill digitally penetrated B.M.'s vagina in the bathroom. B.M. repeatedly told him to stop and managed to push Hill against the bathtub. After that she walked out of the bathroom and into the kitchen. The testimony of Hill again inserting his finger into her vagina surfaced during B.M.'s cross-examination by Hill's counsel. At trial, Hill did not testify, but in his statement to police, Hill said he merely knocked on the front door, found out that B.M.'s father was not there, and immediately left.

The Court of Appeals found that these events were not legally or factually separate incidents, essentially concluding that the two penetrations comprised one criminal episode. 28 Kan. App. 2d at 36. In Kansas, under these facts, the two acts of penetration were separate incidents of rape. See *State v. Zamora*, 247 Kan. 684, 693-94, 803 P.2d 568 (1990) (rejecting the argument that a digital penetration followed by penile penetration comprised one count of rape, not two); *State v. Long*, 26 Kan. App. 2d 644, 645-47, 993 P.2d 1237 (1999), *rev. denied* 268 Kan. 892 (2000) (separate and distinct incidents where the defendant was convicted of four counts

of rape and one count of sodomy and the incidents occurred in a 1-to 2-hour period in the victim's apartment).

However, until the day before Hill's trial, the State was unaware that an alleged penetration occurred in the kitchen. Thus, Hill was only charged with one count of rape. As in *Cooks*, 446 Mich. 503, more than one act was presented as evidence of a single criminal offense. Here, materially identical evidence was presented with respect to both acts of rape. Hill did not present a separate defense or offer materially distinct evidence of impeachment regarding any particular act. The defense presented a general denial of participation in any wrongful conduct.

We agree with the Court of Appeals' conclusion that jury confusion was not shown here. In applying a harmless error review, since there was no extrinsic evidence to support the charges, the sole issue was the credibility of the victim's account of the two alleged penetrations. The evidence offered no possibility of jury disagreement regarding Hill's commission of either of these acts. By the jury's rejection of Hill's general denial, we can unequivocally say there was no rational basis by which the jury could have found that Hill committed one rape but did not commit the other.

In many multiple acts cases, the acts will be materially distinct and will be associated with different defenses, so a specific unanimity instruction will be required. Here, however, any error in omitting such an instruction was harmless beyond a reasonable doubt.

We agree with the Court of Appeals' caveat:

"This holding should not be interpreted to give prosecutors carte blanche to rely on harmless error review, and it is strongly encouraged that prosecutors elect a specific act or the trial court issue a specific unanimity instruction. In many cases involving several acts, the requirement that an appellate court conclude beyond a reasonable doubt as to all acts will not be found harmless.

"It should be acknowledged that a prior Kansas Supreme Court case leaves open the possible interpretation that in multiple acts cases a general unanimity instruction followed by polling the jury is an effective cure to the lack of a specific unanimity instruction. See *State v. Smith*, 268 Kan. 222, 230, 993 P.2d 1213 (1999). Polling the jury is insufficient to cure a multiple acts problem unless the jurors are polled specifically to their agreement on the same incident." 28 Kan. App. 2d at 36.

## Multiplicity

Hill argues in the alternative that the charge of rape, Count I (in the bathroom), was multiplicitous with the charge of aggravated indecent liberties with a child, Count II (in the kitchen.) He contends that the elements of the two charges are the same and that the charged offenses arose out of a single act. This contention lacks merit.

Comparing rape and aggravated indecent liberties, not all of the K.S.A. 21-3504(a)(3)(A) statutory elements of aggravated indecent liberties are included in the K.S.A. 21-3502(a)(2) statutory elements of rape. The elements of aggravated indecent liberties are not necessarily proved if the elements of rape are proved. *State v. Belcher*, 269 Kan. 2, 5-6, 4 P.3d 1137 (2000). The two charges were not multiplicitous. Here the offenses occurred in the bathroom and in the kitchen. Charges are not multiplicitous when the offenses occur at different times and in different places. See *State v. Garnes*, 229 Kan. 368, 373, 624 P.2d 448 (1981).

## The Sufficiency of the Evidence

Hill contends that there was insufficient evidence from which a rational factfinder could conclude that he was guilty of aggravated criminal solicitation of a child. We disagree. Our standard of review is whether, after a review of all the evidence, viewed in the light most favorable to the prosecution, we are convinced that a rational factfinder could have found Hill guilty beyond a reasonable doubt. *State v. Murillo*, 269 Kan. 281, 285, 7 P.3d 264 (2000).

K.S.A. 21-3511(a) describes aggravated indecent solicitation of a child as "[e]nticing or soliciting a child under the age of 14 years to commit or to submit to an unlawful sexual act. . . ." K.S.A. 21-3110(21) says: " 'Solicit' or 'solicitation' means to command, authorize, urge, incite, request, or advise another to commit a crime."

Hill cites *State v. Pendelton*, 10 Kan. App. 2d 26, 690 P.2d 959 (1984), to support his insufficiency of the evidence argument. Pendelton was convicted of aggravated indecent solicitation of a child. Hill argues that, unlike the statements of solicitation in *Pendelton* (Pendelton "went down on his knees, unzipped his pants, pulled out his penis, and offered the boys money to 'jack him off.' " 10

Kan. App. 2d at 26), the comment here was ambiguous. We disagree. The record shows that Hill's comment was made after he forced himself upon B.M. in the bathroom, touching her breasts and digitally penetrating her vagina. B.M. left the bathroom and walked down the hallway toward the kitchen, with Hill following close behind her. Between the bathroom and the kitchen, Hill asked, "So where are we going to get it on?" Then, he caught up to B.M. in the kitchen and allegedly touched her breasts and digitally penetrated her vagina again. The comment was a solicitation. Sufficient evidence supported the conviction for aggravated indecent solicitation of a child.

### Unanimous Verdicts—Aggravated Indecent Solicitation

Hill argues that the district court erred by not instructing the jury that it was required to agree on the same underlying crime to convict Hill of aggravated indecent solicitation of a child. The Court of Appeals did not address this issue, although it was argued in Hill's brief.

No specific unanimity instruction was requested or given regarding the aggravated indecent solicitation charge. As previously mentioned, the district court gave a general unanimity instruction. The district court instructed the jury on aggravated indecent solicitation of a child and on the elements of the two different crimes, rape or indecent liberties with a child, that would support a conviction for aggravated indecent solicitation. Generally, when no request or objection is made, we reverse only if the failure to give an instruction was clearly erroneous. *State v. DePriest*, 258 Kan. 596, 605, 907 P.2d 868 (1995).

Hill argues in his petition for review that the analysis of this issue is identical to that presented in the first issue, *i.e.*, which of the two acts of digital penetration constituted the rape. The implication is that rape and indecent liberties with a child were multiple acts, where each could have been a crime supporting an aggravated indecent solicitation theory. The State argues that here, rape and aggravated indecent liberties were alternative means. We agree. The jury was asked whether the crime occurred as a result of (1) enticing or soliciting B.M. to commit or submit to the act of rape

or (2) taking aggravated indecent liberties with a child. We have said:

> " 'In an alternative means case, where a single offense may be committed in more than one way, there must be jury unanimity as to *guilt* for the single crime charged. Unanimity is not required, however, as to the *means* by which the crime was committed so long as substantial evidence supports each alternative means.' [Citations omitted.]" *State v. Timley*, 255 Kan. 286, 289, 875 P.2d 242 (1994).

Substantial evidence was presented here to support each alternative means.

Affirmed.