(106 P.3d 65)
No. 91,589

STATE OF KANSAS, *Appellee,* v. HOWARD JOHNSON, *Appellant.*

Opinion filed

October 8, 2004.

*Rick Kittel*, assistant appellate defender, for appellant.

*Tony Cruz*, assistant county attorney, *Steve Opat*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before HILL, P.J., GREEN and MALONE, JJ.

GREEN, J.: Howard Johnson appeals his convictions by a jury of possession of cocaine with intent to sell, no drug tax stamp, possession of drug paraphernalia, and obstructing official duty. On appeal, Johnson contends that the trial court abused its discretion in admitting previous crime evidence on rebuttal. We agree. In addition, Johnson maintains that the trial court wrongly failed to give a unanimity instruction. We agree. Finally, Johnson argues that his conviction for possession of cocaine with intent to sell was not supported by sufficient evidence. We disagree. Nevertheless, based on the errors, we reverse the previously mentioned convictions and remand for a new trial. Moreover, we direct that the State make an election between the baggie of cocaine and the cocaine residue contained on the scales in the retrial of Johnson for possession of cocaine with the intent to sell. If no election is made, the trial court is directed to give a unanimity instruction.

The police received an anonymous tip that Charles Adams, a criminal suspect, was at 612 West 13th Street, Junction City, Kansas. At approximately 9:45 p.m., Officer Eric Coffman drove by that location and saw several people standing in the shadows of the side of the house. Coffman and his partner exited their unmarked patrol car and walked toward the house. Both officers were wearing black raid vests that said "POLICE" across the front and back. As they approached the house, Coffman saw an individual run from the house. The person was later identified as Johnson.

Coffman yelled, "Police, stop!" or "Stop, police!" and began to chase Johnson. Johnson was wearing a dark-colored jacket and a multicolored baseball cap. At the same time, another person ran from the house in a different direction. Coffman chased Johnson behind the house next door and then across the street. Johnson jumped a fence and disappeared. As officers looked for him, they heard a rattling noise from a chain-link fence in the front of the

house. Coffman went to the front of the house and saw Johnson walking toward an open lot. Johnson was arrested.

Coffman asked Johnson why he had run from the police. Johnson replied that he did not know it was the police and that he thought the police were robbers. Coffman then advised Johnson of his *Miranda* rights and asked him what had happened to the jacket and hat that he was wearing before the chase started. Johnson did not respond. Coffman later found the jacket and cap behind the house where he had lost sight of Johnson. Johnson's identification card and a set of digital gram scales were discovered in the jacket. The scales later tested positive for cocaine residue.

Additionally, Coffman recovered a small baggie of a powdery substance located in the direct path where Johnson had run. The baggie, with no drug tax stamp affixed, was sitting on top of leaves and was not weathered. The substance in the baggie later tested positive for cocaine. The baggie weighed 4 grams.

While Coffman apprehended Johnson, other officers detained three males and two females behind the house. Several of these individuals, in addition to the other man who ran from the scene, were known drug offenders. A search of Johnson revealed $26 in his pants pocket and $70 in his mouth.

The State charged Johnson with possession of cocaine with intent to sell, a violation of K.S.A. 65-4161(a); with no drug tax stamp, a violation of K.S.A. 79-5204(a) and K.S.A. 79-5208; with possession of drug paraphernalia, a violation of K.S.A. 65-4152(a)(3); and with obstructing official duty, a violation of K.S.A. 21-3808(a).

Coffman testified that based on his training and experience, he believed the baggie of cocaine was consistent with the sale of drugs rather than personal use. Coffman's opinion was based on finding the scales, which were consistent with sale rather than personal use, and on the absence of any drug paraphernalia indicating drug use. Further, Coffman testified that the area was well known for drug use and sales.

Johnson testified that the jacket and hat that had been recovered belonged to him. He conceded that he had the scales in his jacket pocket and stated that was why he had run from the police and discarded the jacket. Johnson asserted that the scales belonged to

a friend who had asked Johnson to hold them while the friend went to the store. Johnson denied ever possessing the baggie of cocaine and denied having knowledge of where it came from.

The jury found Johnson guilty of all four counts. The trial court imposed concurrent prison sentences of 56 months for possession of cocaine with intent to sell, 6 months for no drug tax stamp, 11 months for possession of drug paraphernalia, and 12 months for obstructing official duty.

Johnson argues that the trial court erred in allowing the State to call a rebuttal witness to testify about a prior episode where Johnson ran from police and was apprehended and found with cocaine on his person. According to Johnson, this evidence constituted improper K.S.A. 60-455 evidence. The trial court, however, did not admit the evidence under K.S.A. 60-455. Nevertheless, Johnson maintains that the prejudicial effect of this evidence outweighed its probative value and, thus, reversal of his convictions is required.

The trial court admitted the evidence as rebuttal evidence.

"Rebuttal evidence is that which contradicts evidence introduced by an opposing party. The use and extent of rebuttal rests in the sound discretion of the district court. [Citation omitted.] The erroneous admission of rebuttal evidence is not grounds for reversal unless discretion has been abused to defendant's prejudice. [Citation omitted.]" *State v. Flournoy*, 272 Kan. 784, 805, 36 P.3d 273 (2001).

Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, an appellate court will not conclude that the trial court abused its discretion. *State v. Washington*, 275 Kan. 644, 670, 68 P.3d 134 (2003).

Johnson takes issue with the State's cross-examination of him about whether he knew the purpose of the digital scales and whether he had run from the police in the past. The exchange immediately followed Johnson's explanation that he was holding the scales for a friend who did not want to take the scales with him to the store. The exchange was as follows:

"Q. [Prosecutor] So what's the big deal about being caught with scales?
"A. [Johnson] It's just—I guess it's what I'm charged with, drug paraphernalia.
"Q. But, I mean, if they're just scales, what's the big thing about having scales?
"A. I guess he was using them for drugs, sir.

"Q. And you knew that when he gave them to you?
"A. No, I knew that he wanted me to hold them, he wanted me to hold them until he got back from the store."

The State then turned its attention to whether Johnson had run from the police in the past:

"Q. Okay. As a matter of fact, Mr. Johnson, you've run from the police before, haven't you?
"A. Yes, sir, I have.
"Q. For the exact same thing, huh?
"A. No, sir, I haven't.
"Q. Excuse me?
"A. No, sir, I haven't.
"Q. You've never run from the police for the exact same thing?
"A. For—no, sir, I never ran from the police.
"Q. You've never run from the police?
"A. Not for no scales, I never had no scales running from the police, sir.
"Q. Have you—have you ever run from the police because of drugs?
"A. Yes, sir, I have."

Defense counsel objected, arguing that the State's line of questioning was highly prejudicial and that the State had not moved for the admission of the evidence under K.S.A. 60-455. Further, defense counsel argued that he had not opened the door for this testimony during Johnson's direct examination. In response, the State asserted that it was proper rebuttal evidence because Johnson maintained that the drugs were not his and that he lacked intent to possess them.

The trial court ruled that the State could call a rebuttal witness to testify about Johnson's previous instance of running from the police while in possession of cocaine. The trial judge explained that Johnson had "opened the door, I think, by saying he's never run before and that's never happened, also the fact he doesn't know what the scales were for, that's rebuttal." Defense counsel reminded the court of Johnson's clarification that he had never run before with scales in his possession but had, in fact, run from the police before.

The State recalled Coffman to testify about a previous incident where Johnson ran from the police. When Johnson was apprehended, the officers found a large quantity of suspected crack co-

caine packaged for sale. Coffman testified that a person who had crack cocaine for sale would know what digital scales are used for.

On appeal, Johnson presents several challenges to the admission of the prior incident evidence. First, Johnson argues that the evidence was impermissible under K.S.A. 60-455. The State, however, did not attempt to introduce the evidence under K.S.A. 60-455. Moreover, the trial court did not admit the evidence under K.S.A. 60-455. Rather, the court merely stated the evidence was proper as *rebuttal evidence* because Johnson had opened the door by denying running from police previously and by denying knowledge of the purpose of the scales.

Next, Johnson argues that the trial court improperly found that he had opened the door to such evidence being admitted by testifying that he had never run from police before and did not know what the scales were for. Indeed, it is apparent that the trial court misconstrued the totality of Johnson's testimony on these issues. As Johnson correctly states, he did admit having previously run from police because of drugs; he simply denied having previously run from police because of possessing scales. Regarding the purpose of the scales, Johnson testified that he surmised they were used in connection with drugs but did not know at the time whether that was the case. According to Johnson, his testimony was not cause for impeachment, as he admitted previously running from the police and acknowledged the probable use of the scales.

The State argues that the rebuttal evidence was proper due to Johnson's theory of defense, namely, that he was simply holding the scales for a friend and had no knowledge of either the baggie of cocaine or the cocaine residue on the scales. The State maintains that the rebuttal evidence supported the State's contention that Johnson knowingly and intentionally possessed cocaine with intent to sell.

Even if Johnson's testimony did open the door for the rebuttal evidence, Johnson maintains that the State was not allowed to open the door for itself. The testimony prompting the rebuttal evidence was elicited by the State during its cross-examination of Johnson. Johnson maintains that the State could not then rely on that testimony as grounds for presenting the rebuttal evidence.

As Johnson correctly notes, the rule that a party can open the door to otherwise inadmissible evidence applies only when one party opens the door for another party to present such evidence. "A party cannot open the door for itself to present the inadmissible evidence." *State v. McClanahan*, 259 Kan. 86, 94, 910 P.2d 193 (1996). Here, if any door was opened, it was opened by the State.

We conclude that the trial court abused its discretion in admitting the prior crimes evidence on rebuttal. Not only did Johnson admit to having run from the police in the past, but also he admitted he ran because of drugs. Thus, there was no need for the State to introduce the circumstances of that prior incident. Further, Johnson admitted possessing the scales. Regarding their use, Johnson surmised they could be used for drugs but asserted that he did not know whether those particular scales were actually used for that purpose.

Next, we must determine whether the improper rebuttal evidence was unduly prejudicial and denied Johnson a fair trial or whether its admission was harmless.

" 'Normally, the admission or exclusion of evidence is measured by the harmless error rule. In determining if the erroneous admission or exclusion of evidence is harmless, the court must consider if it is inconsistent with substantial justice, *i.e.*, affects the substantial rights of a defendant and, if not, whether this court can declare beyond a reasonable doubt that the error had little, if any, likelihood of having changed the result of the trial.' [Citation omitted.]" *State v. Davidson*, 31 Kan. App. 2d 372, 384, 65 P.3d 1078, *rev. denied* 276 Kan. 971 (2003).

See *State v. Smart*, 26 Kan. App. 2d 808, 812, 995 P.2d 407 (1999), *rev. denied* 269 Kan. 939 (2000) (reversal of conviction based upon trial court's erroneous admission of prior crimes evidence is proper only when admission prejudiced defendant's right to substantial justice).

Here, although Johnson's attorney asked the jury to find Johnson guilty of the drug paraphernalia charge, there is serious question whether the jury would have found Johnson guilty of all the charges in the absence of the prior crimes evidence. The evidence was not overwhelming. The allegation that Johnson possessed the baggie of cocaine was based on the baggie being found in the path of Johnson's flight from the officers. The prior crimes evidence clearly

served to demonstrate that Johnson had a propensity to commit drug offenses and therefore he committed the crimes now charged. To allow this type of rebuttal evidence would be to ignore the principle of K.S.A. 60-455.

We determine that the improper admission of rebuttal evidence was not harmless beyond a reasonable doubt but instead deprived Johnson of substantial justice. Accordingly, we reverse Johnson's convictions and remand with directions for a new trial.

Next, Johnson asserts that his right to a unanimous verdict was violated by the trial court's failure to give a unanimity instruction. As the State notes, Johnson did not request a unanimity instruction at trial. A challenge to the trial court's failure to give an instruction that is raised for the first time on appeal is reviewed for clear error. See K.S.A. 2003 Supp. 22-3414(3); *State v. Banks*, 273 Kan. 738, 743-44, 46 P.3d 546 (2002). An instruction error is clearly erroneous only if the reviewing court is firmly convinced there is a real possibility the jury would have rendered a different verdict if the trial error had not occurred. 273 Kan. at 744.

In a multiple acts case, several acts are alleged and any one of the acts could constitute the crime charged. In such a case, the jury must be unanimous as to which act constitutes the crime. *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003); *State v. Timley*, 255 Kan. 286, Syl. ¶ 2, 875 P.2d 242 (1994). Therefore, to ensure jury unanimity, either the State must elect the particular act upon which it will rely for conviction or the court must instruct the jury to agree on a specific underlying criminal act. 255 Kan. at 289-90.

The jury was instructed that to establish that Johnson committed the crime of possession of cocaine with intent to sell, the State must prove: (1) Johnson possessed cocaine; (2) he did so with the intent to sell, deliver, or distribute it; and (3) he did this act on or about March 15, 2003, in Geary County, Kansas. On appeal, Johnson argues that a unanimity instruction was required because the jury could have found him guilty of possession of cocaine with intent to sell based upon his possession of either the baggie of cocaine or the scales with cocaine residue and that the State failed to elect the specific act upon which it was relying for the possession charge.

In *State v. Hill*, 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001), our Supreme Court adopted a two-step analysis for determining whether a unanimity instruction is required:

"In applying a two-step harmless error analysis, the first step is to decide whether there is a possibility of jury confusion from the record or if evidence showed either legally or factually separate incidents. Incidents are legally separate when the defendant presents different defenses to separate sets of facts or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. Incidents are factually separate when independent criminal acts have occurred at different times or when a later criminal act is motivated by 'a fresh impulse.' When jury confusion is not shown under the first step, the second step is to determine if the error was harmless beyond a reasonable doubt with respect to all acts."

Preliminarily, Johnson urges this court to apply a structural error analysis rather than the two-step analysis set forth in *Hill*. According to Johnson, a harmless error analysis applies only in cases involving a general denial and he presented mixed defenses regarding possession of the baggie of cocaine and possession of the scales on which cocaine was found. In contrast, the State argues that Johnson's admission of possessing the scales did not constitute a separate defense to possessing cocaine with intent to sell because Johnson denied possessing any cocaine.

Contrary to Johnson's argument, the *Hill* analysis applies despite his admission of possessing the scales. In announcing the proper framework for analyzing a trial court's failure to give a unanimity instruction, the *Hill* court explicitly rejected the structural error approach previously advocated by such cases as *State v. Wellborn*, 27 Kan. App. 2d 393, 4 P.3d 1178, *rev. denied* 269 Kan. 940 (2000), and *State v. Barber*, 26 Kan. App. 2d 330, 988 P.2d 250 (1999). *Hill*, 271 Kan. at 937-39.

Here, Johnson argues that jury confusion was possible because he presented separate defenses to the alleged acts; namely, he admitted possessing the scales but denied possessing the baggie of cocaine. Further, Johnson asserts that the evidence showed both factually and legally separate incidents. For support, Johnson cites *State v. Kinmon*, 26 Kan. App. 2d 677, 995 P.2d 876 (1999), a case in which defendant was charged with possession of cocaine based

upon the discovery of cocaine in two places. The *Kinmon* court reversed defendant's conviction, holding the trial court's failure to give a unanimity instruction was clear error. 26 Kan. App. 2d at 679. Johnson fails to note, however, that *Kinmon* applied the structural error approach later abrogated by *Hill*. For this reason, *Kinmon* provides little guidance.

The State maintains that it based the allegation that Johnson possessed cocaine with intent to sell on the total amount of cocaine found, both on the scales and in the baggie. Indeed, during closing arguments, the State did not specifically elect one or the other instance as constituting the crime of possession of cocaine with intent to sell. Rather, the State apparently sought to tie the evidence together in urging the jury to find Johnson guilty of the crime.

This case involved factually separate incidents. One incident was based on Johnson's actual possession of the scales. The other incident was based on Johnson's alleged constructive possession of the baggie of cocaine. The incidents, also, were legally separate: Johnson denied possessing the baggie of cocaine but admitted possessing the scales; and although Johnson denied knowing that the scales contained cocaine residue, he admitted possessing the scales.

Based on the evidence presented, there was a possibility of jury confusion. Johnson maintains that in finding him guilty of possession of cocaine with intent to sell, the jury could have relied either on his possession of the scales on which cocaine residue was found or, conversely, on his possession of the baggie of cocaine. This is correct. As a result, we cannot say that the error in failing to provide a unanimity instruction was harmless.

Next, Johnson argues that there was insufficient evidence to support his conviction of possession of cocaine with intent to sell. According to Johnson, a finding that he constructively possessed the baggie of cocaine necessarily required the basing of an inference on an inference, which is prohibited. Specifically, he argues that the jury would have to infer that Johnson possessed the baggie of cocaine based upon his nonexclusive presence on the premises; then, the jury would have to infer that he intended to sell the drugs.

Johnson acknowledges that the jury could have based its guilty verdict on his possession of the scales on which cocaine was found. Johnson argues, however, that this evidence was insufficient to prove he possessed cocaine with intent to sell (1) because there was no evidence he had knowledge of the cocaine residue on the scales and (2) because the residue could not be intended for sale. Interestingly, this argument directly contradicts Johnson's earlier unanimity argument.

"When a defendant challenges the sufficiency of evidence, [an appellate] court's standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the State, the appellate court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt. [Citation omitted.]" *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

A conviction can be sustained only where every element of a crime is proven beyond a reasonable doubt. *State v. Star*, 27 Kan. App. 2d 930, 934, 10 P.3d 37, *rev. denied* 270 Kan. 903 (2000). A conviction of even the gravest offense may be sustained by circumstantial evidence. *Davis*, 275 Kan. at 118. As previously noted, to prove Johnson committed the crime of possession of cocaine with intent to sell, the State was required to prove: (1) Johnson possessed cocaine; (2) he did so with the intent to sell, deliver, or distribute it; and (3) he did this act on or about March 15, 2003, in Geary County, Kansas.

Johnson correctly notes that the State did not present any direct evidence that Johnson actually possessed the baggie of cocaine. Rather, the State's allegation was based on the theory of constructive possession. To this end, Johnson makes the following argument: "The only proof that Mr. Johnson possessed the baggie of cocaine is circumstantial and was afforded too much weight by the jury." It is well settled that an appellate court will not determine the credibility of witnesses or weigh conflicting evidence. *State v. Moore*, 269 Kan. 27, 30, 4 P.3d 1141 (2000).

Further, Johnson contends that a reasonable jury would not have found he constructively possessed the baggie. According to Johnson, he did not have exclusive possession of the premises on which the baggie was found and there were no other incriminating circumstances linking him to the baggie. As a result, it could not be

inferred that he knowingly possessed the drugs. In fact, Johnson notes the following: that the area was known for its high rate of drug activity, that officers apprehended several known drug offenders during this incident, and that Johnson was not the only person who ran from the police that night.

For support, Johnson cites *State v. Cruz*, 15 Kan. App. 2d 476, 809 P.2d 1233, *rev. denied* 249 Kan. 777 (1991). In *Cruz*, this court reversed defendant's conviction of possession of cocaine with intent to sell, holding the finding of guilt was not justifiable based on the evidence presented. 15 Kan. App. 2d at 492. In doing so, this court stated it was reversible error to allow a jury to speculate on unjustifiable inferences: "Guilt may never be based on inference alone. Presumptions and inferences may be drawn from facts established, but presumption may not rest upon presumption or inference on inference. [Citation omitted.]" 15 Kan. App. 2d at 490.

Importantly, the *Cruz* court acknowledged that the element of possession may be proven by circumstantial evidence. 15 Kan. App. 2d at 489. "Possession of a controlled substance requires having control over the substance with knowledge of and the intent to have such control." 15 Kan. App. 2d 476, Syl. ¶ 10. The *Cruz* court explained that if a defendant lacks exclusive possession of the premises upon which drugs are found, it cannot be inferred that the defendant knowingly possessed the drugs unless other incriminating circumstances link the defendant to the drugs. 15 Kan. App. 2d at 489. Incriminating factors include the following: (1) the defendant's previous sale or use of narcotics; (2) the defendant's proximity to the area in which the drugs were found; (3) the fact that the drugs were found in plain view; and (4) the defendant's incriminating statements or suspicious behavior. 15 Kan. App. 2d at 489.

Here, Johnson lacked exclusive possession of the area where the baggie was found. Nevertheless, other incriminating factors linked Johnson to the baggie of cocaine. For instance, the baggie was found in the direct path of where Johnson had run. The baggie was found in plain view on top of leaves; it had not been weathered in any way. Additionally, Johnson's behavior was suspicious. He fled from officers whose vests were clearly marked "POLICE." When apprehended, Johnson maintained that he ran because he did not

know they were officers. At trial, however, Johnson testified that he knew they were officers and that he ran because he had scales in his pocket. Finally, Johnson was hiding money in his mouth.

When the evidence is viewed in the light most favorable to the State, the evidence sufficiently linked Johnson to the baggie of cocaine. Additionally, the evidence demonstrated that the baggie was consistent with the sale of drugs rather than mere personal use. As a result, Johnson's conviction of possession of cocaine with intent to sell was supported by sufficient evidence. Nevertheless, because we have previously determined that the erroneous admission of rebuttal evidence was not harmless, we reverse Johnson's convictions and remand with directions for a new trial.

Reversed and remanded with directions.