(106 P.3d 505)
No. 91,547

STATE OF KANSAS, *Appellee*, v. WILLIAM G. LETOURNEAU, *Appellant*.

Opinion filed February 18, 2005.

*Sandra Carr,* assistant appellate defender, for appellant.

*Robert A. Walsh*, county attorney, and *Phill Kline*, attorney general, for appellee.

Before RULON, C.J., GREENE and HILL, JJ.

GREENE, J.: William G. Letourneau appeals his convictions and sentences for aiding and abetting the manufacture of a controlled substance, possession of drug paraphernalia, possession of ephedrine, and possession of a stimulant, claiming error in the admission of evidence and in the instructions to the jury, as well as insufficiency of evidence and an illegal sentence. Concluding that trial error was not harmless, we reverse the convictions and remand for new trial.

*Factual and Procedural Overview*

The charges against Letourneau resulted from events occurring in Cloud County on June 22, 2002, as law enforcement officers were in the process of executing a search warrant at the residence of Scott Brichat. During the search, officers observed a vehicle pull into the alley behind Brichat's house, stop, back out of that alley, and proceed down the street to enter another alley. The vehicle stopped momentarily in the second alley, and then proceeded on a route which led to the front of Brichat's house, where Brichat exited the passenger side of the vehicle. Some of the officers proceeded to the second alley, where they found a black duffle bag and a large white bucket, both of which ultimately proved to contain paraphernalia used in the manufacture of methamphetamine, together with precursors and completed methamphetamine. Another officer pursued the vehicle, identified the driver as Letourneau, and ultimately arrested him. Letourneau was charged with aiding and abetting in manufacturing a controlled substance, possession of ephedrine, possession of methamphetamine, and possession of drug paraphernalia. He was found guilty on all counts by a jury and sentenced to 178 months' imprisonment, the standard presumptive term for a level 1-C drug felony. On appeal, Letourneau complains of numerous trial errors and illegal sentencing.

*Did the District Court Err in Admitting Alleged Hearsay Evidence of Letourneau's Prior Criminal Activity?*

Letourneau initially complains that the district court erred in admitting a statement of one of the arresting officers that he had

"previous intelligence information" that Letourneau had been involved with Brichat in "cooking" methamphetamine. The circumstances surrounding the elicitation of this testimony is critical to the parties' respective positions.

Upon cross-examination of the officer, defense counsel asked on two occasions whether the officer believed that Letourneau was truthful during the officer's investigatory questioning, and the officer testified that he felt Letourneau gave truthful answers to "most" of the questions. On redirect examination, the State asked the officer if he had a basis not to believe some of Letourneau's answers, asking, "But there's other things that you have that entered into your mind-set as to why you didn't believe him; is that correct?" Defense counsel asked to approach the bench, an off-the-record discussion ensued, and the defense ultimately objected to this question on the grounds that the inquiry was irrelevant, called for hearsay testimony, and sought to introduce evidence of prior crimes. The objections were overruled, and the following testimony was elicited by the State:

"Q. . . . Was there any prior knowledge you had of Mr. Letourneau prior to that evening that entered into the equation as to whether you believed him or not?

"A. Yes, I had prior knowledge.

"Q. And what was that prior knowledge that entered into your equation?

"THE COURT: Continuing objection is noted.

"Q. Your may answer that.

"A. Prior knowledge that I had was Agent Virdin had with the Kansas Bureau of Investigation relayed information to me of information Mr. Letourneau cooking meth with Mr. Brichat.

"Q. Prior to June 22nd?

"A. That is correct."

The State contends that the testimony was not objectionable because (i) defense counsel opened the door to such testimony; (ii) it was not hearsay because it was not offered to prove the truth of the matter asserted; and (iii) any error in its admission was harmless. We disagree as to all three of these contentions and additionally conclude that the evidence was violative of K.S.A. 60-455.

*First*, we disagree that defense counsel "opened the door" by merely asking the officer if he believed Letourneau. The question

did not provoke any need for explaining a basis not to believe the defendant; rather, the officer's answer—presumably unanticipated by the defense—was a qualified affirmative. To suggest that the question somehow opened the door to the *basis* for the qualified answer is a stretch that we decline to make. Granted, a party can open the door to otherwise inadmissible evidence, but neither counsel nor a witness for a party can open the door for itself to present the inadmissible evidence. See *State v. McClanahan*, 259 Kan. 86, 94, 910 P.2d 193 (1996). Moreover, an unanticipated qualified answer to an otherwise innocent question does not open the door to explain the basis for any qualification.

*Second,* we disagree that the hearsay should be permitted because it was not offered to prove the truth of the matter asserted. The State argues that whether the information was true or not was not the issue, but rather the precise issue was simply whether the officer had any basis—whether true or not—for his qualified answer. This may technically be the case, but the officer's basis for his qualified answer was wholly irrelevant. More importantly, the State admitted in oral argument on appeal that it sought a permissible vehicle by which to introduce the Virdin testimony and could not achieve its admission until it felt the door had been opened in this manner. It is not credible for the State to suggest that it did not urgently seek to introduce the Virdin "information" for its truthfulness and for precisely the purposes prohibited by K.S.A. 60-455.

*Finally,* we cannot conclude that the admission of this testimony was harmless. Our review of the record reveals little direct evidence to establish Letourneau's knowledge of the contents of the duffle and bucket or to link him as a participant in any manufacturing process absent the evidence of prior involvement with Brichat in such activities. The testimony regarding Virdin's "intelligence information" served to demonstrate to the jury that Letourneau had a propensity to involve himself in such activity and therefore probably committed the crimes now charged, precisely the purpose prohibited by K.S.A. 60-455. When the State urgently seeks to "back-door" such hearsay evidence of prior crimes into the trial in this manner absent the procedural steps and safeguards

required for such evidence (see *State v. Mason*, 250 Kan. 393, 404, 827 P.2d 748 [1992]), we are not inclined to find the result to be harmless. We conclude that the improper admission of this evidence was not harmless beyond a reasonable doubt but instead deprived Letourneau of a fair trial, thus requiring reversal and a new trial.

*Did the District Court Err in Failing to Give a Unanimity Instruction?*

Letourneau next argues that his right to a unanimous verdict was violated by the district court's failure to give a unanimity instruction as applicable to the charge of possession of methamphetamine. No such instruction was requested at trial, so we review for clear error. See K.S.A. 2004 Supp. 22-3414(3); *State v. Banks*, 273 Kan. 738, 743-44, 46 P.3d 546 (2002).

In a multiple acts case, several acts are alleged and any one of the acts could constitute the crime charged. In such a case, the jury must be unanimous as to which act constitutes the crime. *State v. Davis*, 275 Kan. 107, 115, 61 P.3d 701 (2003). Therefore, to ensure jury unanimity, either the State must elect the particular act upon which it will rely for conviction or the court must instruct the jury to agree on a specific underlying criminal act. *State v. Timley*, 255 Kan. 286, 289-90, 875 P.2d 242 (1994).

In *State v. Hill*, 271 Kan. 929, Syl. ¶ 3, 26 P.3d 1267 (2001), our Supreme Court adopted a two-step analysis for determining whether a unanimity instruction is required. The first step is to determine whether there was a possibility of jury confusion from the record, or if the evidence shows either legally or factually separate incidents. 271 Kan. at 939. A legally separate incident is when a defendant presents different defenses to a separate set of facts, or when the court's instructions are ambiguous but tend to shift the legal theory from a single incident to two separate incidents. 271 Kan. at 939. A factually separate incident is when independent criminal acts have occurred at different times or when a later act is motivated by a "fresh impulse." 271 Kan. at 939. If jury confusion is not shown under step one, the second step is to determine if the

failure to give a unanimity instruction is harmless beyond a reasonable doubt with respect to all acts. 271 Kan. at 939.

Here the State alleged two wholly separate grounds for finding Letourneau guilty of possession of methamphetamine: (i) evidence completed methamphetamine was found among the contents of the duffle and bucket; and (ii) evidence Letourneau allegedly admitted to ingesting methamphetamine earlier on the night of the incident. Letourneau argues on appeal that the State not only introduced evidence of these separate grounds, but also confused the jury as to these separate acts during closing argument:

"And I appreciate that being brought up because I had forgotten we also have the possession of meth, the fact that he took meth out at the sand pit. I didn't even think about that. We had meth in that lab, that's possession of meth. But we got something else to consider now. We've got him saying he took some meth out there."

The possibility of confusion may not have existed based upon the mere evidence of separate acts, but the remarks of the State in closing argument clearly served to give the jury an option of separate incidents as to the possession charge. The possibility of such confusion is particularly harmful to Letourneau given the fact that the evidence of having ingested methamphetamine does not and cannot, by itself, establish possession or control of the substance. See *State v. Flinchpaugh*, 232 Kan. 831, 835, 659 P.2d 208 (1983).

On remand, the State must either refrain from introducing evidence that Letourneau ingested methamphetamine as establishing possession, or a unanimity instruction must be given to assure that the jury is unanimous on an act or acts that may sufficiently establish possession of methamphetamine.

*Did the District Court Err in Admitting Evidence of Injuries Suffered by Officers Upon Inhaling Fumes from the Duffle Bag and Bucket?*

Letourneau asserts he was deprived of a fair trial when the court admitted evidence related to the injuries Crough sustained when he inhaled hazardous fumes from Brichat's clandestine metham-

phetamine lab. Letourneau argues that Crough's testimony was irrelevant and prejudicial.

"The admission of evidence lies within the sound discretion of the trial court. [Citation omitted.] An appellate court's standard of review regarding a trial court's admission of evidence, subject to exclusionary rules, is abuse of discretion. Judicial discretion is abused when judicial action is arbitrary, fanciful, or unreasonable. If reasonable persons could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion. One who asserts that the court abused its discretion bears the burden of showing such abuse of discretion. [Citation omitted.]" *State v. Jenkins*, 272 Kan. 1366, 1378, 39 P.3d 47 (2002).

"Except as otherwise provided by statute, all relevant evidence is admissible. K.S.A. 60-407(f)." *State v. Bloom*, 273 Kan. 291, 303, 44 P.3d 305 (2002).

"Relevant evidence is any evidence 'having any tendency in reason to prove any material fact.' K.S.A. 60-401(b). The determination of relevancy is a matter of logic and experience, not a matter of law. Nevertheless, there must be some material or logical connection between collateral facts and the inference or result they are supposed to establish for them to be competent. [Citation omitted.]" *State v. Pennington*, 276 Kan. 841, 847, 80 P.3d 44 (2003).

Here, the State contends Crough's testimony was relevant because it established the presence of anhydrous ammonia, which helped confirm the lab was operating at the time it was taken from Letourneau's truck and supported its argument that Letourneau had to know what was happening in the bed of his truck. We agree.

Crough's testimony was neither inflammatory nor intended to infuriate the jury. Crough only testified he had not had a lung problem prior to the night Letourneau was arrested, he was still under medical care for his lung condition, and breathing the fumes of anhydrous ammonia is commonly known to cause such injuries. Testimony from a forensic scientist had established methods and processes used by methamphetamine manufacturers, which included transporting paraphernalia from place to place and manufacturing the methamphetamine in stages. We view Crough's testimony as merely establishing the strength of the ammonia fumes and the presence of a currently operating methamphetamine lab in Brichat's black duffle bag, and the white bucket which coincided

with the testimony of the forensic scientist. Morever, Crough's testimony was abbreviated and consisted only of a response to a few questions.

We decline to conclude that the district court abused its discretion in admitting this evidence.

*Were Letourneau's Convictions Supported by Sufficient Evidence?*

Letourneau also argues that his convictions were not supported by sufficient evidence. When a defendant challenges the sufficiency of evidence, we review the evidence in the light most favorable to the State and determine whether a rational jury could have found the defendant guilty beyond a reasonable doubt. *State v. Mays*, 277 Kan. 359, 377, 85 P.3d 1208 (2004).

Although Letourneau argues that the State presented no direct evidence connecting him to the clandestine methamphetamine lab, this argument ignores the circumstantial evidence including that the duffle bag and bucket were being transported in his truck, that fumes from these items were strong enough to cause peril to the investigating officers, and that during a taped interview with authorities, Letourneau admitted ingesting methamphetamine. A conviction of even the gravest offense may be sustained by circumstantial evidence. *State v. Davis*, 275 Kan. at 118. We are convinced that a rational jury could find Letourneau guilty of the crimes charged beyond a reasonable doubt, and therefore reject his argument of insufficient evidence.

*Summary and Conclusion*

Letourneau also argues that he was illegally sentenced. This issue is moot given our reversal and remand for new trial.

Reversed and remanded for new trial to proceed in a manner not inconsistent with this opinion.