NOT DESIGNATED FOR PUBLICATION

No. 121,996

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JESUS G. CASTILLO,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; NANCY E. PARRISH, judge. Opinion filed May 21, 2021. Affirmed.

*Jacob Nowak*, of Kansas Appellate Defender Office, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., ATCHESON, J., and BURGESS, S.J.

PER CURIAM: Jesus G. Castillo was convicted of eluding police, two counts of interference with law enforcement (obstructing official duty and filing a false report), theft, and reckless driving after fleeing from police in his vehicle and then reporting that his vehicle had been stolen during the time the crimes occurred. One of the two officers who identified Castillo as the driver of the vehicle did so based on a traffic stop from three months earlier. The district court ruled that the fact of the traffic stop could be admitted into evidence for the purpose of establishing the officer's ability to identify Castillo, but no details of the stop should be elicited. Castillo makes several evidentiary arguments on appeal, including that the district court allowed impermissible K.S.A. 60-

1

455 evidence by allowing additional details of the traffic stop and that the court allowed improper rebuttal evidence. Castillo also argues that the prosecutor's misstatement of the facts constituted prejudicial error. While admission of the rebuttal evidence was likely erroneous and the prosecutor's misstatement of the facts was clearly an error, these errors were not substantial. The errors dealt with matters tangential to the case. Even their cumulative effect is not enough to recommend reversal. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Officers with the Shawnee County Sheriff's Office ran a license plate tag on a blue Mazda 6 in the early hours of April 4, 2017. The tag came back as stolen. Officers initiated pursuit but lost the vehicle. Deputy Colton Johnson was able to find it within one or two minutes and continued the pursuit. Deputy Johnson was advised to terminate the pursuit after a couple of minutes.

Shortly thereafter, Deputy Justin Dobler spotted the blue Mazda and engaged his emergency lights. The vehicle fled. Deputy Dobler drove behind the vehicle until it eventually came to a stop on a dead-end street after driving over spike traps. When the occupants jumped out of the vehicle, Deputy Dobler recognized the driver as Castillo based on prior contact with Castillo. Officers were unable to stop any of the vehicle's occupants. Deputy Johnson arrived at the scene. He estimated that he arrived approximately 45 minutes after his initial pursuit. Castillo's driver's license was found in the abandoned Mazda, and Deputy Johnson recognized Castillo from the driver's license photo as the driver involved in the earlier pursuit.

Later that morning, Castillo called the Sheriff's Office to report that his Mazda had been stolen from his driveway overnight. Deputy Johnson received a voicemail from Castillo regarding the report. Deputy Johnson tried to call Castillo back and also visit him in person, but he had difficulty locating Castillo. He finally made contact with Castillo at

2

his residence on May 29, 2017. Castillo provided a written statement in support of his stolen vehicle report alleging that Alan Leanos may have stolen his vehicle. Deputy Johnson did not follow up on Castillo's stolen vehicle report because "[he] knew that [Castillo] was the driver of the vehicle" involved in the pursuit.

The State charged Castillo with eluding police, felony interference with law enforcement (obstructing official duty), theft, reckless driving, and misdemeanor interference with law enforcement (making a false report).

Before trial, the State filed a motion to admit evidence pursuant to K.S.A. 60-455. Specifically, it wanted to introduce evidence that Deputy Dobler identified Castillo based on Castillo's prior contact with law enforcement. Castillo responded with a motion in limine seeking to exclude any prior bad acts under K.S.A. 60-455. The district court ruled that the State could present evidence that Castillo was stopped in January 2017, but no further details of the stop. The court reasoned that members of the jury pool were likely to have been pulled over for a traffic infraction and that such evidence was not as prejudicial as other types of information that comes in under K.S.A. 60-455.

At trial, Deputy Dobler testified that he recognized Castillo as the driver of the Mazda "[b]ased on prior contact with the subject." On cross-examination, defense counsel asked Deputy Dobler whether the previous incident from which he recognized Castillo was a traffic stop. Deputy Dobler answered affirmatively. Defense counsel also questioned Deputy Dobler about the number of traffic stops he conducted (approximately 100 to 150 per month), whether he ever had a good view of Castillo when he chased him from behind, what the lighting conditions were like at 3 a.m. when the pursuit occurred, and how far away from Castillo he was. Defense counsel then asked again whether Deputy Dobler could identify someone from a traffic stop given that he had conducted so many of them. Deputy Dobler responded that "the prior contact was very distinct." At this point, defense counsel asked to approach the bench and said that Deputy Dobler's

"testimony is going to 60-455, which he wasn't supposed to go in to." The district court replied that Deputy Dobler did not go into any prior crime or the reason for the stop and had not yet reached any K.S.A. 60-455 evidence. On redirect examination, Deputy Dobler testified that his prior traffic stop with Castillo was distinct because, while an average traffic stop takes 7 to 11 minutes, Castillo's took a couple of hours.

In Castillo's case-in-chief, he called Deputy Dobler and asked him to look at Defense Exhibits 1, 2, and 3, which were offense reports on Leanos. Deputy Dobler testified that he had never seen or had contact with Leanos. Nonetheless, defense counsel had Deputy Dobler read details from the exhibits. The reports showed that Leanos was arrested for possession of a stolen truck and fleeing from police April 11, 2017; driving a stolen car, crashing, and leaving the scene on April 17, 2017 (and being in possession of methamphetamine once he was found); and stealing a vehicle and initiating a pursuit on May 21, 2017. Defense counsel called Deputy Johnson and performed a similar exercise.

As the final day of trial began, the State announced its intention to admit Deputy Johnson's body camera video footage from the night he took Castillo's stolen vehicle report as rebuttal evidence. The video is approximately 16 1/2 minutes long. This video begins with Castillo telling Deputy Johnson that when he woke up on April 4, 2017, his car was gone. Castillo spent several minutes providing a written statement. When he finished, Castillo told Deputy Johnson that he suspected Leanos of stealing his car. He stated:

> "I think it was this one guy that got caught up a month or so ago, his name was Alan Leanos and he got caught up with a stolen 2016 Toyota or something like that. And, um, that night I got caught with him and another friend that's also in jail, like that night I was just trying to hang out with, you know, people from back in the day. It was Alan's birthday or something. And when I hung out with them, yeah, well they found [inaudible] they found a pipe and a scale that belonged to him. But, they just left it in all my car, it was all his stuff."

4

Castillo advised that Leanos could be found in jail. They also discussed Deputy Johnson's attempts to reach Castillo.

Defense counsel objected to admission of the video exhibit on the basis that it was not rebuttal evidence and because it contained K.S.A. 60-455 evidence of Castillo's prior bad acts. The district court watched the video and believed that Castillo's reference to the prior stop was vague. The court did not consider Castillo's statement about Leanos' pipe and scale to be K.S.A. 60-455 evidence. Further, the court held that the evidence was proper on rebuttal because it explained that Castillo had some prior contact with Leanos and that sometimes people who are connected with criminals "go[] on later to commit some crimes." The court then conducted a short *Jackson v. Denno* hearing. Following that, the State called Deputy Johnson to the stand and moved to admit the video. Castillo objected on the basis that he did not "believe [the video] is rebuttal evidence."

The jury found Castillo guilty as charged. The district court sentenced Castillo to 12 months of probation with an underlying prison sentence of 14 months. Castillo appealed.

ANALYSIS

I. *The district court did not err in admitting prior crimes evidence.*

Castillo argues on appeal that the district court allowed two instances of prior crimes evidence in violation of K.S.A. 60-455. First, he challenges the admission of Deputy Dobler's testimony that his prior contact with Castillo was "distinct." Second, he asserts that the State admitted prior crimes evidence through Deputy Johnson's body camera video which "demonstrat[ed] that Mr. Castillo was previously pulled over for a traffic violation where drug paraphernalia was confiscated from his car."

5

K.S.A. 2020 Supp. 60-455 provides:

> "(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion."

"Under the plain and unambiguous language of the statute, evidence of prior crimes or civil wrongs cannot be admitted to prove a criminal defendant's propensity to commit the charged crime, but it can be 'admissible when relevant to prove some other material fact.'" *State v. Gunby*, 282 Kan. 39, 48, 144 P.3d 647 (2006) (quoting K.S.A. 60-455).

There are several safeguards "designed to eliminate the danger that the evidence will be considered to prove the defendant's mere propensity to commit the charged crime." 282 Kan. at 48. These include the requirement that K.S.A. 60-455 evidence be relevant to prove one of eight material facts listed in the statute, that the material fact be disputed, and that the probative value of the evidence outweigh its potential for producing undue prejudice. The Kansas Supreme Court has recognized at least three types of prejudice that can result from admission of prior wrongs without these safeguards:

> "'First a jury might well exaggerate the value of other crimes as evidence proving that, because the defendant has committed a similar crime before, it might properly be inferred that he committed this one. Secondly, the jury might conclude that the defendant deserves punishment because he is a general wrongdoer even if the prosecution has not established guilt beyond a reasonable doubt in the prosecution at hand. Thirdly, the jury might conclude that because the defendant is a criminal, the evidence put in on his behalf should not be believed.'" 282 Kan. at 48-49 (quoting *State v. Davis*, 213 Kan. 54, 58, 515 P.2d 802 [1973]).

Determining whether evidence constitutes prior crimes evidence under K.S.A. 60-455 presents a question of statutory interpretation, which this court reviews de novo. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019). In reviewing the admission of prior crimes evidence under K.S.A. 60-455, an appellate court uses a three-step test. First, the court considers whether the evidence is relevant to establish a material fact at issue. Determining whether the prior crimes evidence is material is subject to de novo review. Second, the reviewing court must determine whether the material fact is disputed and whether the material fact is relevant to prove the disputed fact. This determination by the district court is reviewed for an abuse of judicial discretion. Finally, the court must consider whether the probative value of the evidence outweighs its prejudicial effect. This step is also analyzed under an abuse of discretion standard of review. *State v. Haygood*, 308 Kan. 1387, 1392-93, 430 P.3d 11 (2018).

Castillo does not challenge the evidence under the first two prongs of the test. He agrees that the identity of the Mazda's driver was material to the outcome of the case and in dispute. He argues only that the district court erred in finding the evidence more probative than prejudicial.

A. *The District Court Did Not Err Under K.S.A. 60-455 in Allowing Deputy Dobler's Testimony that His Prior Contact with Castillo Was "Distinct."*

Castillo argues that the district court erred in permitting Deputy Dobler's testimony that his prior stop of Castillo was "distinct." He asserts that the evidence on the distinctness of the stop exceeded the court's pretrial order and that its prejudicial effect outweighed its probative value.

As a preliminary matter, the admissibility of evidence that Deputy Dobler recognized Castillo from a prior traffic stop is not at issue. In fact, it was defense counsel who first asked whether the prior contact was a traffic stop. Even if evidence of the traffic

stop's occurrence was admitted in error, a party that invites error may not then complain of that error on appeal. *State v. Hebert*, 277 Kan. 61, 78, 82 P.3d 470 (2004); see also *State v. Anthony*, 282 Kan. 201, 215, 145 P.3d 1 (2006) (holding that defendant invited any error that may have arisen from evidence that defendant threatened murder victim because it was defense counsel who asked the witness whether defendant had made any threats).

Castillo's brief also mentions Deputy Dobler's testimony regarding the atypical length of the stop. He relies on it to argue that the evidence regarding the traffic stop "far exceeded the court's rationale for admission, because while getting pulled over for a traffic violation may be a common occurrence most jurors have experienced, having that traffic stop extend multiple hours certainly isn't." However, this issue is not preserved because Castillo did not make a contemporaneous objection to this testimony at trial. See *State v. Dukes*, 290 Kan. 485, 488, 231 P.3d 558 (2010) ("The contemporaneous objection rule requires each party to make a specific and timely objection at trial in order to preserve evidentiary issues for appeal."). Castillo makes no comment as to why this court should address this unpreserved issue. Accordingly, it should not be considered.

Notwithstanding the lack of a contemporaneous objection, there was no error in admitting the evidence. In making this determination, we analyzed how Deputy Dobler's description of the stop as "distinct" affected the probative value and prejudicial effect of the traffic stop evidence. Castillo's brief discusses how the evidence exceeded the justification for the district court's order. However, very little is said on the issue of how Deputy Dobler's testimony actually prejudiced Castillo. To demonstrate error, Castillo must show that the district court abused its discretion in determining that the probative value of the evidence outweighed its prejudicial effect. See *Haygood*, 308 Kan. at 1393. He failed to meet this burden.

8

Evidence of the prior traffic stop was offered to establish Deputy Dobler's basis for identifying Castillo. As the parties agree, this fact is material as Castillo's identification is in dispute. This is demonstrated by defense counsel's questions to Deputy Dobler about the lighting, speed of the pursuit, his distance from Castillo, and other factors that impacted his ability to identify Castillo as the Mazda's driver. Deputy Dobler's testimony that the prior stop was distinct provides a rational basis why he so clearly remembered Castillo. It explains how Deputy Dobler, who conducted approximately 100 to 150 traffic stops per month, which only lasted 7 to 11 minutes on average, could remember Castillo after three months. The prejudicial effect of the testimony, on the other hand, is minimal. That Castillo was the subject of a traffic stop, even a distinct one, is not inherently suggestive that he committed the crimes charged in this case.

It must be specifically noted that it was questioning by defense counsel that opened up the door to the very evidence Castillo now complains of. It was established by defense counsel's cross-examination that Dobler's prior contact with Castillo was the result of a traffic stop. Defense counsel went further in trying to attack Dobler's identification by questioning how he could remember this traffic stop given he conducted so many of them. Dobler answered the question in a manner that was actually quite benign given the circumstances when he said the stop was "distinct." It is only logical that the question of how it was distinct would follow. Castillo cannot complain that defense counsel's questions led to testimony that he did not like. See *Herbert*, 277 Kan. at 78.

It cannot be said that the district court abused its discretion in permitting the testimony.

B. *The District Court Did Not Err Under K.S.A. 60-455 in Admitting the Video of Deputy Johnson Taking Castillo's Statement Where Castillo Mentions Leanos' Crimes Discovered During the Traffic Stop.*

Castillo also argues that the district court erred under K.S.A. 60-455 when it allowed the State to admit Deputy Johnson's body camera video because "evidence that police found drug paraphernalia in [Castillo's] car . . . constitute[s] prior crimes evidence under K.S.A. 60-455(a)." This evidence, he asserts, also exceeded the scope of the district court's order on K.S.A. 60-455 evidence.

Before reaching the merits, this court must address the application of the contemporaneous objection rule. The State argues that this issue is not preserved because Castillo did not make a contemporaneous objection on K.S.A. 60-455 grounds when the exhibit was admitted. Castillo acknowledges that he only objected to the exhibit on the grounds that it was improper rebuttal evidence. However, he asks this court to consider the issue because the purpose underlying the preservation rule has been satisfied.

Generally, any pretrial objection to the admission or exclusion of evidence must be preserved by contemporaneously objecting at trial. K.S.A. 60-404; *State v. Richard*, 300 Kan. 715, 721, 333 P.3d 179 (2014). The purpose of this rule "is to give the trial court the opportunity to conduct the trial without exposure to tainted evidence, thus avoiding possible reversal, and the rule is also necessary to ensure that litigation may be brought to a conclusion." *State v. Spagnola*, 295 Kan. 1098, 1102, 289 P.3d 68 (2012). However, "preservation is a prudential rather than jurisdictional obstacle to appellate review," and on occasion Kansas appellate courts have refused to strictly apply the contemporaneous objection rule in some contexts upon finding the underlying purpose for the rule has been satisfied. See, e.g., *State v. Hart*, 297 Kan. 494, 510-11, 301 P.3d 1279 (2013); *Spagnola*, 295 Kan. at 1103; *State v. Breedlove*, 295 Kan. 481, 490-91, 286 P.3d 1123 (2012).

Castillo has a persuasive argument that the spirit of the preservation rule has been satisfied. He objected to the video's admission on K.S.A. 60-455 grounds when the State announced its intention to introduce the video as rebuttal evidence. Because the video was brought in during the State's rebuttal case, the district court watched the video with the benefit of two days of trial testimony to provide context to its analysis. After hearing the parties' arguments and reviewing the exhibit, the district court held that the evidence could be admitted. Shortly thereafter, with the court's ruling still fresh, the State moved to admit the video. The district court had full opportunity to address Castillo's argument he now advances on appeal, which arguably satisfies the purpose of the preservation rule. See *Kansas City Power & Light Co. v. Strong*, 302 Kan. 712, 723-24, 356 P.3d 1064 (2015).

Assuming that the preservation rule has been satisfied, Castillo's argument must fail on the grounds that the evidence he complains of is not prior crimes evidence under K.S.A. 60-455. He claims that his statements in the video concerning Leanos' pipe and scale being found in his car constitutes evidence of prior crimes. It may be evidence of a prior crime, but it was a crime committed by Leanos. There is nothing in the statement that Castillo committed a crime or any inference that he did. His mere association with Leanos is not evidence that Castillo committed a crime.

Castillo's brief comment in the video does not fall under the prior crimes analysis. It does not show that Castillo committed a crime or civil wrong.

Notwithstanding any of the foregoing, the admission of the testimony concerning a *distinct* traffic stop or the video that refers to Leanos' prior crime is harmless error. Erroneous admission of K.S.A. 60-455 evidence "is not so inevitably so prejudicial to require automatic reversal." *Gunby*, 282 Kan. at 57. Rather, the evidence is examined under a harmless error analysis where the party benefiting from the admission of the evidence must persuade the court that there is no reasonable probability that the error

11

affected the trial's outcome in light of the entire record. *State v. Brown*, 58 Kan. App. 2d 599, Syl. ¶ 7, 473 P.3d 910 (2020), *rev. denied* 312 Kan. 894 (2021).

In support of its argument that any error is harmless, the State emphasizes Deputy Dobler's testimony that he recognized Castillo with certainty. During the pursuit, Deputy Dobler had multiple light sources, including his headlights, a spotlight, and a white light bar mounted on top of his vehicle, that allowed him to clearly see the Mazda's driver. This, coupled with his testimony concerning the lengthy prior stop of Castillo, provided strong support for his identification of Castillo. Deputy Johnson was also "100 percent" certain that he correctly identified Castillo. He did not think that Leanos looked at all like Castillo.

Castillo makes the opposite argument—that the officers' ability to identify him after catching only "brief glimpses of him through the darkness of night during their pursuits"—was far from certain. The case "pitted the reliability of the officer[s'] identification against Mr. Castillo's credibility." He asserts that his defense that Leanos stole his car was reasonable and, further, that the credibility of his assertion was bolstered by the fact that Leanos had been arrested in three prior cases which involved auto theft.

The State's argument is more compelling. The evidence concerning Castillo's identification from the night of the pursuits was strong. A jury could have easily concluded Castillo was the driver based on this evidence alone. Furthermore, the bolstering of Castillo's identification as a result of the prior distinctive traffic stop was not an error on the part of the State, but the result of questioning by the defense. The video of Castillo's interview by Detective Johnson did not concern any crime alleged to have been committed by Castillo. The statements from the video that Leanos was arrested for possession of a pipe and scales could have bolstered Castillo's defense that Leanos was prone to criminal behavior and capable of stealing Castillo's car. Any errors under K.S.A. 60-455 in admitting these details from Castillo's prior traffic stop were harmless.

II. *The district court erred in admitting rebuttal evidence, but such error was harmless.*

As stated above, Castillo objected to Deputy Johnson's body camera video footage on the basis that it was improper rebuttal evidence. His objection to the evidence on that basis is properly preserved. By allowing in the video, which contained evidence that Castillo "previously had drug paraphernalia confiscated from his car," Castillo asserts that the district court "undoubtedly tarnished his credibility in the eyes of the jury and thereby unduly prejudice[ed] his defense." This court reviews the admission of rebuttal evidence for abuse of discretion. *State v. Sitlington*, 291 Kan. 458, 464, 241 P.3d 1003 (2010).

The Kansas Supreme Court has defined rebuttal evidence as follows:

"'Rebuttal evidence is that which contradicts evidence introduced by an opposing party. It may tend to corroborate evidence of a party who first presented evidence on the particular issue, or it may refute or deny some affirmative fact which an opposing party has attempted to prove. It may be used to explain, repel, counteract, or disprove testimony or facts introduced by or on behalf of the adverse party. Such evidence includes not only testimony which contradicts witnesses on the opposite side, but also corroborates previous testimony.' *State v. Willis*, 240 Kan. 580, 583, 731 P.2d 287 (1987)." *Sitlington*, 291 Kan. at 464.

The defense's case-in-chief was focused on showing that Leanos had a recent history of stealing vehicles and fleeing from police. Deputy Johnson's body camera footage did not serve to confirm or deny this defense. It added no explanation or challenge to Castillo's evidence. The additional facts surrounding the traffic stop in particular were not part of Castillo's evidence. Instead, Castillo fought throughout the trial to keep those facts out of evidence. In short, the propriety of allowing this evidence as rebuttal evidence is questionable and likely an abuse of discretion.

13

It is not necessary to determine whether the district court erred in admitting the video as rebuttal evidence because improperly admitted rebuttal evidence is subject to the harmless error test. *State v. Johnson*, 33 Kan. App. 2d 490, 497, 106 P.3d 65 (2004). As outlined above, if the district court erred by admitting the video, the error was harmless and unlikely to change the outcome of the case.

III. *The prosecutor did not commit reversible error by misstating the evidence.*

Castillo also argues that the prosecutor committed reversible error by misstating the evidence to the jury three times during rebuttal.

The appellate court uses a two-step process to evaluate claims of prosecutorial error:  error and prejudice. *State v. Sherman*, 305 Kan. 88, 109, 378 P.3d 1060 (2016).

> "To determine whether prosecutorial error has occurred, the appellate court must decide whether the prosecutorial acts complained of fall outside the wide latitude afforded prosecutors to conduct the State's case and attempt to obtain a conviction in a manner that does not offend the defendant's constitutional right to a fair trial. If error is found, the appellate court must next determine whether the error prejudiced the defendant's due process rights to a fair trial. In evaluating prejudice, we simply adopt the traditional constitutional harmlessness inquiry demanded by *Chapman* [*v. California*, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)]. In other words, prosecutorial error is harmless if the State can demonstrate 'beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict.' [Citation omitted.]" *Sherman*, 305 Kan. at 109.

The first misstatement occurred when the prosecutor said Deputy Dobler recognized Castillo from "prior incidents with him." Defense counsel objected that, because Deputy Dobler only had one prior contact with Castillo, saying there were

14

"incidents"—i.e., plural incidents—misstated the evidence. The prosecutor corrected her statement to say that Deputy Dobler recognized Castillo from a single prior incident. The district court also instructed the jury to disregard the prosecutor's inaccurate statement because the prosecutor misspoke.

The second and third instances occurred when the prosecutor said:

> "What we did see here on the Axon video we saw today was that Mr. Castillo and Mr. Leanos know each other. They've been together when Mr. Leanos has been taken in for possessing meth before. They were together when Mr. Leanos got in trouble with law enforcement. Mr. Leanos isn't just a stranger to the defendant, he's a guy that he rides around in cars with."

At trial, Castillo objected to the statement that Castillo "rides around in cars with" Leanos because the evidence only showed one instance of Castillo and Leanos riding in a vehicle together. Again the prosecutor corrected her statement, and the court instructed the jury to disregard the inaccurate statement. On appeal, Castillo also objects to the statement that Leanos and Castillo were together when Leanos was arrested for methamphetamine, in that the body camera video only revealed that a pipe and scales were in Castillo's car. A review of the record supports Castillo's argument that the prosecutor misstated the facts in these three instances. The State does not dispute this on appeal, instead focusing on the prejudice analysis.

While the three statements at issue here constitute prosecutorial error because they misstate the facts, the error had "little, if any, likelihood of changing the result of the trial." *State v. Flournoy*, 272 Kan. 784, 797, 36 P.3d 273 (2001).

Castillo argues that he is prejudiced by the State's misstatement that Leanos was arrested for methamphetamine while they were together as opposed to finding scales and a pipe because it "resulted in the jury being advised that Mr. Castillo was previously

15

involved in much more serious criminal activity than was presented in the evidence." He reasons that "[i]n Kansas, possession of methamphetamine is always a felony whereas possession of paraphernalia is often times a misdemeanor offense." See K.S.A. 2020 Supp. 21-5706(a), (c)(1); K.S.A. 2020 Supp. 21-5709(b), (e)(3). There are several reasons, however, why this misstatement likely had no effect on the verdict. First, the statement did not discuss prior criminal activity on Castillo's part, just Leanos'. Second, the fact that police had previously found methamphetamine on Leanos was first introduced to the jury by Castillo when he admitted several offense reports pertaining to Leanos. It is unlikely that the jury would have been shocked by a statement that Leanos was found to be in possession of methamphetamine rather than a pipe and scales when Castillo had already established that Leanos had a proclivity for that behavior. Third, there is nothing to show that the prosecutor tried to paint Castillo with the broad brush that because Leanos had possessed methamphetamine on prior occasions, Castillo must have also.

The two instances where the prosecutor suggested that Castillo had multiple contacts with Leanos and Deputy Dobler were even less likely to impact the verdict. Castillo argues that by stating that Deputy Dobler had multiple prior incidents with Castillo, "the State implicitly advised the jury Mr. Castillo had previously committed multiple crimes." He also contends that because the jury was led to mistakenly associate Castillo and Leanos "riding in a car together with methamphetamine possession, misstating the number of times the two ride around in cars suggests Mr. Castillo is frequently nearby or in possession of methamphetamine." Castillo's arguments rely heavily on general inferences. Also, the misstatements did not directly concern the crimes charged against Castillo. These factors reduce the prejudicial effect of the errors. Any remaining negative inferences the misstatements concerning multiple contacts with Leanos may have caused was cured by defense counsel's quick objections, the prosecutor's corrections, and the district court's admonishments to the jury to disregard

the misstatements. These corrections emphasized that there was only evidence of a single contact between Castillo and the two others.

The Supreme Court found factors similar to those in this case noteworthy in holding that the prosecutor's misstatement of the facts was harmless error in *State v. Thomas*, 307 Kan. 733, 415 P.3d 430 (2018). There, a jury convicted Sheena Thomas of one count of aggravated battery with a deadly weapon (a stiletto heel) against her coworker, Traci Borntrager, after a dispute over a sale of clothing. Thomas maintained that Borntrager was the initial aggressor. At trial, a witness testified that Borntrager had been the aggressor in an earlier altercation with Thomas. In closing argument, the prosecutor said the witness testified that Thomas was the initial aggressor in the earlier altercation and that this testimony supported the State's claim that Thomas was the aggressor in the crime charged. Defense counsel objected that the prosecutor misstated the evidence, and the court said, "'The jury will be the decider of the evidence.'" 307 Kan. at 744.

On appeal, the Supreme Court held that the error was harmless beyond a reasonable doubt. First, the misstatement at issue did not "directly concern the aggravated battery itself," and the witness "did not see the fight during which Borntrager suffered the stiletto-inflicted wound." 307 Kan. at 745. Second, defense counsel clarified the witness' testimony following the misstatement. Third, the district court instructed the jury that it should disregard any statement not supported by the evidence.

Here, any prejudicial effect of the prosecutor's misstatements was minimized by instructing the jury to disregard statements made that are not supported by evidence. The prosecutor corrected her statement to say that Deputy Dobler recognized Castillo from a single prior incident. In addition to giving the jury the general instruction on disregarding statements not in evidence, the district court also admonished the jury immediately after

the misstatements were made to disregard two of the prosecutor's inaccurate statements. For these reasons, the prosecutorial errors do not warrant reversal.

IV. *Cumulative error did not deny Castillo a fair trial.*

Finally, Castillo argues that cumulative errors denied him a fair trial. Cumulative trial errors, when considered together, may require reversal of the defendant's conviction when the totality of the circumstances establish that the defendant was substantially prejudiced by the errors and denied a fair trial. *State v. Hirsh*, 310 Kan. 321, 345, 446 P.3d 472 (2019). In assessing the cumulative effect of errors during the trial, appellate courts examine the errors in the context of the entire record, considering how the trial judge dealt with the errors as they arose; the nature and number of errors and their interrelationship, if any; and the overall strength of the evidence. 310 Kan. at 345-46.

In addition to the prosecutorial errors, the district court likely erred when it admitted Deputy Johnson's body camera footage as rebuttal evidence. Thus, a cumulative error analysis would be appropriate. Even when viewed together, however, these errors were not significant enough to deny Castillo a fair trial. Castillo claims prejudice from each error generally weakened his credibility by leading the jury to infer that he was involved in criminal activity. Additionally, each error involves a factual matter that is not directly related to the charges against Castillo and which have found to be harmless. Under these circumstances, the cumulative effect of the errors does not outweigh the strength of the State's evidence. The State had two police officers confidently identify Castillo as the driver of the Mazda. The jury heard evidence challenging that identification. The errors did not impact the jury's ability to weigh the evidence. Instead, the errors dealt with tangential facts.

Affirmed.

18